# MONTEZUMA CANAL COMPANY *v.* SMITHVILLE CANAL COMPANY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 1.  Argued October 21, 24, 1910.—Decided November 28, 1910.

Where the trial court makes findings of facts and states conclusions of law thereon but certifies no rulings in respect of evidence, and the Supreme Court of the Territory enters a general judgment of affirmance, manifestly based upon the correctness of such findings of fact, they furnish a sufficient statement for the appeal; and, in this court, the question is whether they are sufficient to support the decree. *Stringfellow* v. *Cain,* 99 U. S. 610.

Notwithstanding there may have been a prior appropriation of water, if the rights of appropriators were adjudicated in a suit of which the parties had notice, the judgment in that suit may be pleaded as *res judicata* in a subsequent suit to determine the rights of appropriators, and the amount awarded to an appropriator by judgment in the first suit cannot be reduced.

The fact that it is within the legislative power to provide administrative machinery to supervise the common use of water, does not render invalid the decree of a court providing such machinery to carry out a particular decree if the court deems it necessary and proper so to do.

As the laws of Arizona authorize the Supreme Court to cause its judgments to be carried into execution, that court does not transcend its authority in appointing a commissioner to supervise the

taking of water from a stream by the various appropriators to whom
its common use is awarded and in apportioning the expense *pro
rata* between them.

11 Arizona, 99, reversed.

THE facts, which involve the rights of appropriators
of water of a river in Arizona, are stated in the opinion.

*Mr. Thomas Armstrong, Jr.,* with whom *Mr. John J.
Hawkins* and *Mr. C. L. Rawlins* were on the brief, for
appellant.

*Mr. Walter Bennett* tor appellees.

- MR. JUSTICE WHITE delivered the opinion of the court.

The decree of the Supreme Court of the Territory of
Arizona (11 Arizona, 99; 89 Pac. Rep. 512), which is ap-
pealed from, affirmed a decree of a District Court of the
Territory determining the rights of appropriators within
the county of Graham to the waters of the Gila River.

In the brief of counsel for the appellee it is suggested
that the appeal should be dismissed because the matter
in dispute does not exceed the sum of five thousand dol-
lars, and because the appellant has no substantial financial
interest in the cause. We think, however, that the record
sufficiently shows that the jurisdictional amount is in-
volved, and that the appellant has such interest as en-
titles it to prosecute the appeal. We shall, therefore,
consider the case upon the merits.

The issues below were made up by an amended com-
plaint, in which the Smithville Canal Company and the
Central Canal Company and the water-users under these
canals were plaintiffs, and the Montezuma Canal Com-
pany and other canal companies, as also the water-users
under such canals, were defendants. The general nature
of the controversy is indicated by the character of the

decree entered in the District Court just stated. Incorporated in the answer of the Montezuma Canal Company and its water-users were averments, in the nature of a cross bill against the San Jose Irrigating Company and the San Jose Extension Canal Company and various other defendants, setting up a former judgment recovered in the District Court of Graham County by the Montezuma Canal Company as settling between the Montezuma Company and said co-defendants rights in the water of the river. The San Jose Irrigating Company, it is to be remarked, was incorporated in 1892, and in 1904 the San Jose Extension Canal Company was incorporated, and undertook the management, repair and operation of a part of the canal previously under the control of the San Jose Irrigating Company.

The trial court made findings of fact and stated conclusions of law thereon, but certified no rulings in respect to the admission or rejection of evidence. The Supreme Court of the Territory made no express findings of fact, but entered a general judgment of affirmance, manifestly based upon the correctness of the findings of the trial court. Under such circumstances the findings of the District Court furnish a sufficient statement of the facts for the purposes of this appeal. *Stringfellow* v. *Cain*, 99 U. S. 610. The question for decision, therefore, is whether such findings are sufficient to support the decree. *Ib.*

We are concerned, however, only with the error assigned by the Montezuma Canal Company, as that company alone appealed to the Supreme Court of the Territory, and it is the only party to the record now seeking a reversal of the judgment of affirmance entered by the appellate tribunal.

The contentions urged by the Montezuma Company are twofold: First, that due effect was not given to the prior judgment which it pleaded and which determined its rights in the water of the Gila River as against the

appropriators of water from that river at points above
the head of its canal; and, second, that error was com-
mitted in the appointment of a so-called water commis-
sioner, charged with the duty of distributing the water
among the different canals according to the adjudged
priorities. There being then no controversy in respect
to the rights to water decreed in favor of the canals sit-
uated below the head of the Montezuma Canal Company,
the findings in respect to those canals need not be partic-
ularly referred to.

Before stating the contents of the decree which was
entered in the trial court we make a condensed statement
of the facts embodied in the findings upon which the de-
cree was based, in order to a comprehension of the con-
troversy arising for determination.

There are 23,728 acres of land in the county of Graham,
Territory of Arizona, which are irrigated by water diverted
from the Gila River by means of twenty-five ditches or
canals. These canals extend from a point in section 29,
township 6 south, range 28 east, at first in a southwest-
wardly and then in a northwestwardly direction, to a
point forty-one miles distant at the northeast corner of
the southeast quarter of section 35, township 4 south,
range 23 east. Commencing with the head of this irri-
gation system the canals in question, in their order as
respects the flow of the waters of the river and the number
of acres irrigated by each canal, are as follows: Brown,
100 acres; Sanchez, 400 acres; Mejia, 320 acres; Four-
ness, 260 acres; San Jose, 3,000 acres; Michelena, 450 acres;
Montezuma, 3,750 acres; Union, 2,900 acres; Sunflower,
400 acres; Graham, 962 acres; Central, 2,675 acres; Oregon,
1,100 acres; Smithville, 1,760 acres; Bryce, 515 acres;
Dodge, 450 acres; Nevada, 800 acres; Curtis, 800 acres;
Kempton, 850 acres; Reid, 100 acres; Ft. Thomas, 960
acres; Thompson, 240 acres; Military, 400 acres; Saline,
46 acres; Zeckendorf, 500 acres. The Montezuma Canal

was first constructed. The six canals situated above the head of that canal were constructed as follows: The San Jose and the Michelena in 1874, the Mejia in 1877, the Sanchez in 1883, the Fourness in 1891 and the Brown in 1896. The first canal below the Montezuma is called the Union, and was constructed in 1879. Among other things it was found that the Union Canal "carries water for one hundred acres that was reclaimed in 1874 and irrigated by water that was then diverted from the river and carried to the land by the Montezuma Canal. . . ."

Embodied in the "conclusions of law" made by the court is a statement that William Ellsworth and other named individuals "were the persons or successors in interest to the persons who in 1875 appropriated water for and applied it to the first 300 acres of land" in certain named sections, "and who are diverting and carrying water thereto through the San Jose Canal. . . ."

One-half of a miner's inch per acre was found to be necessary for the irrigation of the lands served by the various canals. It was further found that a surface flow of 7,500 miners' inches in the Gila River at the head of the irrigation system furnished more water than is needed to irrigate the entire acreage shown by the evidence to have been in cultivation in the year 1904; and it was also found that "there is a greater flow than this amount during the larger part of the year, so that the amount of water available for irrigation purposes is more than one-half of a miner's inch per acre for a greater length of time each year than the time during which the supply is less than one-half inch per acre."

Substantially all of the canals referred to are now controlled by incorporated canal companies, respecting whom the trial court found as follows:

"The different incorporated canal companies, who are parties plaintiff and defendant herein, are duly and regularly incorporated under the laws of this Territory, and

own and control the several canals as alleged in the plead-
ings herein, which canals were originally operated by
unincorporated partnerships or societies, and the present
corporations, parties hereto, are the successors to the
unincorporated owners of the several canals, and are in
every instance carrying the water for the use of the land
owners or the successors in interest of the land owners
who were the original appropriators of the water carried
therein for irrigation purposes. None of the parties hereto
have been engaged or are now engaged in carrying water
for hire, and none of the incorporated companies, parties
hereto, have appropriated any water in their corporate
capacity. None of the several parties hereto who are
land owners, appropriators of water, or who are receiving
water for irrigation from the different incorporated com-
panies or through the several canals owned by the parties
hereto, have ever maintained their right to their several
priorities as against the coöwners of land or co-users of
water in their respective canals, but the individual land
owners and appropriators of water that is furnished under
the management of each of the several ditches or canals,
herein referred to, have surrendered to their co-users in
that canal their priority, and the water that is taken from
the river for the use of the land under the several canals
has been, by the consent of the different land owners under
each canal, delivered to the different tracts of land in
accordance with the extent of the interest in the ditch
or canal of each land owner, regardless of the acreage
cultivated by the said land owner, and regardless of the
date when the said acreage was placed under cultivation."

Findings XI and XII are as follows:

"XI. On the 17th day of February, 1897, a decree was
entered in this court in action No. 505 wherein the Monte-
zuma Canal Company was plaintiff, the San Jose Irri-
gating Company, a corporation, Chiricahua Cattle Com-
pany, a corporation, Pedro Michelena and others were

defendants, wherein it was judged and decreed that the plaintiff had the right and was entitled to have flow into the Montezuma Canal continuously from the Gila River at all times during the dry season of the year when water is low and scarce in said river, 1,000 miner's inches of water, and was entitled to have flow from the said river into said canal 2,000 miner's inches of water at times of wet seasons of the year when water is high and plentiful therein, as against each and all of the defendants in said action, and in which it was ordered, adjudged and decreed that said defendants above named, and all persons claiming under them and each of them, be perpetually restrained and enjoined from diverting or taking water from the said river above the head of the plaintiff's said canal, or in any manner obstructing the flow of water in the said river, so as to prevent the said water from flowing in the bed of said river down the same, and therefrom into plaintiff's canal to the full extent of a thousand inches during each and every dry season of the year when water is low and scarce, and also from in any manner preventing the said 2,000 miner's inches of water from flowing down the channel or bed of said river, and from flowing therefrom into the plaintiff's said canal during the wet seasons of the year when water is plentiful in said river.

"XII. On the 18th day of September, 1900, a complaint was filed in the District Court of the Second Judicial District, in and for Graham County, Territory of Arizona, in action No. 797, in which the San Jose Irrigating Company was plaintiff and E. L. Tidwell *et al.* were defendants, and on March 31, 1901, a stipulation was filed in the said cause No. 797, by and between the San Jose Irrigating Company and its stockholders on the one hand and Frank Dysart, Pedro Michelena, and Frank McLean, using water on lands owned by them, through the Michelena Ditch, on the other hand; in which it was stipulated and agreed that the grantors and predecessors

in interest of both parties made their original appropria-
tion of the water of the Gila River at the same date or
time and that neither should, as against the other, claim
or attempt to prove any prior or superior right to any
of the water of the said Gila River by reason of having
been prior in date or time of making the original appro-
priation of the water of the said Gila River; and on the
29th of June, 1901; a decree was entered in the said Dis-
trict Court in the said action No. 797, in which it was
found and decreed by the court that the first right to
diversion, use and enjoyment of the water in the Gila
River, after the prior appropriation of 1,000 miner's inches
theretofore decreed to the Montezuma Canal Company,
was in the plaintiff, the San Jose Irrigating Company,
its shareholders and stockholders, to the extent of a per-
petual flow of 1,500 miner's inches, and in the defendants
Frank Dysart, Alexander McLean, and Pedro Michelena,
using water through the Michelena Ditch, to the extent
of a perpetual flow of 500 miner's inches of water in the
Gila River.

"That neither the plaintiff or defendants, users of water
under the Michelena Ditch, have priority of right over
the other to the use of the water of the said Gila River,
but they shall have equal right thereto, and shall pro rate
the flow of water in the Gila River in the above propor-
tions in case of scarcity of water therein, or in case of a
failure of a full flow of water in said river from any cause
sufficient to supply each with the quantity herein decreed,
to be the quantity to which each is entitled in point of
time."

We excerpt in full in the margin [1] the decree which was

---

[1] Be it remembered, that on the 28th day of April, 1905, the same
being a regular judicial day of the April term of the said District Court,
this cause came on regularly for trial before the court without a jury,
a jury having been expressly waived by the parties in open court.
The parties appeared in person and by their respective attorneys, and

entered by the trial court, omitting the tabular statement
as to the amounts of water to which the water-users under
the several canals were entitled when the surface flow
at the head of the irrigating system was 300, 400, 500,

the court having heard the testimony of the witnesses and the argu-
ments of counsel, and having examined the documentary evidence, the
records and papers introduced by both parties, the evidence was
closed and the cause was submitted to the court for consideration and
decision, and after due deliberation thereon and examination of the
briefs filed by the attorneys of the respective parties, the court de-
livered its findings and decision in writing (filed herein) and orders
that judgment be entered in accordance therewith.

Wherefore, by reason of the law and the findings aforesaid, it is
ordered and adjudged and decreed that the several parties to this
suit are entitled to receive and are hereby authorized to divert and
convey from the Gila River water sufficient, each for his or their lands,
from time to time, in the amounts and in the order of priority as shown
in the tabular statement hereto attached, and filed herewith, and
marked "Tabular statement of amounts of water to which the water
users under the several canals are entitled at different stages of water
in the river, showing the accretions to the surface flow at the head of
the irrigation system, and giving the approximate amounts thereof at
the head of the different canals."

And the several parties hereto are each hereby forever enjoined from
in any wise obstructing or interfering with the rights of any of the
other parties to this suit and for the purpose of carrying into effect
this decree Albert T. Colton is hereby appointed a commissioner of
this court, to hold said office and exercise the powers and duties thereof,
hereinafter prescribed, until a further order of this court.

The said commissioner shall have the power, at all time, when it
shall be proper and necessary, in the discharge of his duties, to enter
upon any and all of those certain canals and ditches known as the
Brown, Sanchez, Mejia, Fourness, San Jose, Michelena, Montezuma,
Union, Sunflower, Graham, Central, Oregon, Smithville, Bryce, Dodge,
Nevada, Curtis, Kempton, Zeckendorf-Clavenger, Reid, Fort Thomas,
Zeckendorf-Collins, Thompson, Military, Saline, and upon each and
every part thereof, and upon all the dams, gates, flumes, and other
structures and appliances, for the obstruction, diversion, or convey-
ance of water from said Gila River for the irrigation of lands under
any or all of said canals, or ditches, and have supervision and direction
of the placing of, changing, closing or opening, of the same for the

750, 1,000, 1,500, 2,000, 2,500, 3,000, 3,500, 4,000, 4,500, 5,000, 5,500, 6,000, 6,500, 7,000 and 7,500 inches respectively.

The question arises whether due effect was given to

purpose of the discharge of his duties, and to direct the placing of proper gates, dams or other means for the control of the water of said river at the heads of the canals or other points on the banks of said canals as he may direct, at the expense of the parties hereto interested therein, and to make such rules and regulations as he may deem proper and expedient, to be observed by the parties hereto, for the distribution and use of said water.

And it is further ordered that said commissioner shall in person, with the assistance of such help as he may need, superintend and control the distribution and use of water by the parties hereto, and by the proper practice direct the diversion of such water from said river and its conveyance to the place of use by whatsoever means he may deem best to secure the greatest economy therein. In the service of said water he shall direct the distribution thereof in accordance with the rights of the parties as to the extent of land irrigated and order of priority of time of appropriation as in this decree established. In the distribution and use of such water the commissioner shall take as a basis of the supply necessary for the cultivation of said lands one-half of a miner's inch constant flow for each acre of land, or at that ratio, reckoning forty miner's inches as the equivalent to a flow of one cubic foot per second; provided, however, that no land shall be served with an amount of water in excess of that beneficially used thereon. In measuring the water so supplied the measure shall be taken for the water supplied to the several canals at the point of diversion from the river.

The commissioner shall report, from time to time, to the court as to his action in the premises, and shall, whenever he needs the same, apply to the court for further directions as to his powers and duties to make this decree effective.

Any of the parties to this suit may apply to this court for any proper modification of this order or in the supervision and direction of the commissioner.

The compensation of said commissioner shall be one hundred and fifty dollars and twenty cents ($150.20) per month, and shall be paid by the parties hereto in the proportion set out in the following table, to wit:

A table designating the amounts to be paid by the water users un-

the decree entered in the action No. 505 on February 17, 1897, in favor of the Montezuma Canal Company, referred to in finding No. XI; in other words, Is the decree as entered warranted by the facts as found?

der the several canals and ditches, as their pro rata proportion of the salary of the commissioner, based upon the acreage irrigated under each canal:

| Canal. | Acres. | Amount. |
|---|---|---|
| Brown. | 100 | $ .65 |
| Sanchez. | 400 | 2.55 |
| Mejia. | 320 | 2.00 |
| Fourness. | 260 | 1.65 |
| San Jose. | 3000 | 19.00 |
| Michelena. | 450 | 2.85 |
| Montezuma. | 3750 | 23.75 |
| Union. | 2900 | 18.35 |
| Sunflower. | 400 | 2.55 |
| Graham. | 962 | 6.10 |
| Central. | 2675 | 16.95 |
| Oregon. | 1100 | 6.95 |
| Smithville. | 1760 | 11.15 |
| Bryce. | 515 | 3.25 |
| Dodge. | 450 | 2.85 |
| Nevada. | 800 | 5.05 |
| Curtis. | 800 | 5.05 |
| Kempton. | 850 | 5.40 |
| Reid. | 100 | .65 |
| Ft. Thomas. | 960 | 6.10 |
| Thompson. | 240 | 1.50 |
| Military. | 400 | 2.50 |
| Saline. | 36 | .20 |
| Zeckendorf. | 500 | 3.15 |

Total acres. 23,728   Total am't $150.20

And the said parties shall pay said proportionate sum into the office of the clerk of this court for the use of the said commissioner on the first day of each and every month.

And it is further ordered and decreed that the gates of the water users in arrears of payments to said commissioner in accordance with the foregoing provisions may be kept closed by said water commissioner until said arrears are paid and satisfied.

We premise that the Montezuma Canal Company and the defendant, individuals and canal companies in action No. 505, whether viewed as appropriators of water or as mere carriers for others, sufficiently represented the users of the waters of the respective canals to cause such water-users to be bound by the judgment. *Tenem Ditch Co.* v. *Thorpe*, 1 Washington, 566; *Arroyo Ditch & Water Co.* v. *Baldwin*, 155 California, 280; 100 Pac. Rep. 874.

The portions of the tabular statement annexed to the decree with which we are now concerned relate to the distribution of water adjudged as between the Montezuma Canal and the canals above the head of the Montezuma. Although, as against the appropriators of water served by the San Jose Canal and the Michelena Ditch the Montezuma Company by the terms of the decree in ac-

It is further ordered and decreed that in the case of each incorpo-rated company, party hereto, that is operating a canal or ditch the pro rata portion of the said commissioner's compensation falling due from the acreage of the water users of such canal shall be a charge against the canal company and shall be paid by proper officer of such company to the clerk of this court on the first day of each month, for the account of said commissioner, and the said officer of the said canal company is hereby authorized to close the gates of water users, under the canal operated by said canal company, who may at any time be in arrears for more than sixty days in the payment of the pro rata share of said commissioner's compensation due from the acreage owned or controlled by said water users, and the said officer is hereby ordered and required to close the gates of the said canal at any time the said canal company may be in arrears of payment, for more than sixty days, to the clerk of this court of the pro rata part of the compensation due from the acreage irrigated under the said canal, and to keep such gate closed and the flow of water through said canal arrested until said arrearage is paid in full and the commissioner is hereby author-ized to superintend such closing of the gate and arrest of flow and to see that the same is done in accordance with provisions of this decree. The parties herein each pay their own cost and the court cost common to all parties necessarily incurred herein is adjudged against all the parties hereto in the same proportion as the salary of the commissioner has been apportioned herein.

tion No. 505 "had the right and was entitled to have flow into the Montezuma Canal continuously from the Gila River at all times during the dry season of the year when water is low and scarce in said river, 1,000 miner's inches of water," these provisions were disregarded in the distribution of water ordered in this case. This plainly appears when it is considered that by the decree the following allowances were made to the San Jose and Michelena Canals; when, if the rights conferred upon the Montezuma Canal by the decree pleaded as *res judicata* had been respected, no allowances whatever at the stated stages of water could have been recognized as existing in the San Jose and Michelena Canals, viz., 120 inches when the surface flow at the head of the irrigation system is 400 inches, 320 inches when the surface flow is 750 inches, 480 inches when the surface flow is 1,000 inches, and 600 inches when the flow is 1,500 inches, with an allowance also to the Mejia Canal in the latter event of 30 inches.

While the findings do not establish the reasons which led to these allowances contrary to the decree which was pleaded as *res judicata*, there is room for conjecture that the deductions from the Montezuma and the allowances to the San Jose and Michelena Canals contrary to the decree were made for the following reasons: *a*, As it was found that in 1875 Ellsworth and others had appropriated water for the irrigation of three hundred acres of land, and were diverting the same through the San Jose Canal, and the date of this appropriation was prior to some of the appropriations served through the Montezuma Canal, it was considered that this priority should be regarded in the distribution, even if to do so would conflict with the prior judgment in favor of the Montezuma Canal; and *b*, Because the share which was given to the Michelena Canal out of the allowances made contrary to the prior judgment in favor of the Montezuma Canal was presum-

ably so given to the Michelena Canal, in order to com-
ply with the terms of the judgment in action No. 797, re-
ferred to in Finding XII, which establish an equality of
rights in the water between the San Jose and the Miche-
lena Canals. But if this be the theory upon which the
court considered it was justified in disregarding the prior
judgment, its action was erroneous. This was so, because
the rights of the appropriators to the water carried through
the Montezuma Canal as against appropriators of water
diverted by the San Jose Canal were adjudicated as late
as 1897 by the decree which was pleaded as *res judicata*,
and as no facts were stated by the court which served
to take the appropriations of water made by Ellsworth
and others in 1875 out of the operation of the judgment
of 1897, we can perceive no reason why the fact that appro-
priations were made in 1875 by Ellsworth *et al.* justified
a disregard of the rights which the judgment of 1897 es-
tablished in favor of the Montezuma Canal.

The remaining contention urged is based upon the
action of the trial court, affirmed by the Supreme Court
of the Territory, in the appointment of a water commis-
sioner to make distribution of the waters of the Gila River
pursuant to the apportionment adjudicated by the decree,
and imposing upon the Montezuma Company a liability
to pay its *pro rata* share of the salary of the commissioner
as fixed by the decree. The Supreme Court of the Terri-
tory was of the opinion "that it is essential that an officer
of the court be continuously on the river to regulate the
amount to be diverted under the decree by each canal,
in accordance with the ever-varying volume of water in
the river, according to the tabulated statement," that the
appointment of the commissioner was a proper choice
of a method to carry the decree into effect, and that the
appointment was authorized as well by a section of the
Revised Statutes of the Territory, providing that "the
court shall cause its judgment and decree to be carried

into execution," as by the power which the court possessed by virtue of its "general jurisdiction to provide all necessary means to carry out its judgment and decree."

It would indeed. seem that the decree was modeled upon legislative remedies provided for similar situations in other jurisdictions, as the decree and the remedies which it affords bear a peculiar resemblance to legislative provisions enacted in some of the States where irrigation is practiced, to control and regulate the use of water for. irrigating purposes.   See part IV, Wiel's Water Rights in the Western States, 2d edition, pp. 590 *et seq.*   The reason for the creation of statutory provisions of this and kindred character undoubtedly is, as said in *Farm Investment Company* v. *Carpenter*, 9 Wyoming, 110, "to be found in the inability of the ordinary procedure and processes of the law to meet the necessities pertaining to the segregation by various individuals or companies of water from the same stream by separate ditches or canals, and at different points along its course, under rights by appropriation to so divert and use the water."

But because it was within the legislative power to provide administrative machinery to supervise the common use of water in a flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the decree entered by the court below was in excess of its authority.   On the contrary, in view of the absence of legislative action on the subject and of the necessity which manifestly existed for supervising the use of the stream by those having' the right to take the water in accordance with the decree, which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it.   It follows from what we have said that error was committed by the court below in refusing to give due effect

to the judgment in action No. 505, which was pleaded as
*res judicata* by the Montezuma Canal Company.

*The judgment of the Supreme Court of the Territory of
Arizona is reversed and the cause is remanded for fur-
ther proceedings not inconsistent with this opinion.*