## UNITED STATES v. AMERICAN DITCH ASS'N et al.

### No. 1762.

District Court, D. Idaho.

March 31, 1933.

H. E. Ray, Dist. Atty., of Boise, Idaho, and B. E. Stoutemyer, Reclamation Counsel, of Portland, Or., for plaintiff.

Fred J. Babcock, Atty. Gen., McElroy & Chalfant, Davison & Davison, Richards & Haga, McKeen F. Morrow, Frank T. Wyman, and Thos. L. Martin, all of Boise, Ida-

ho, John J. Plowhead, of Caldwell, Idaho, Alfred A. Fraser, Hawley & Worthwine, Karl Paine, and C. T. Ward, all of Boise, Idaho, Scatterday & Stone, of Caldwell, Idaho, Wm. Healy and Carl A. Burke, both of Boise, Idaho, Cleve Groome, T. A. Walters, Walter Griffiths, and Thos. E. Buckner, all of Caldwell, Idaho, and G. W. Grebe, of Kuna, Idaho, for defendants.

BOURQUIN, District Judge.

The amended complaint alleges in plaintiff rights to the use of the waters of Boise river, prior to any and all of some 400 defendants (state of Idaho, counties, cities, corporations, associations and individuals), and prays the order in use of all parties be determined, likewise the "economical duty of water."

Some defendants have defaulted, some have answered, and some have moved to dismiss, in substance, for that in the courts of Idaho are two suits in one of which plaintiff is a party, wherein priorities or order in use of the waters has been finally adjudicated and economical duty periodically adjudicated, leaving naught undone, but final adjudication of said duty between bench and bottom lands and entry thereof in the final decrees.

To sustain the motions appeal is made to res judicata, and to comity or the principle that a court, seized of or in possession of a thing or res in process of litigation, is free to proceed to determination without interference by any other court.

The motion heard, the evidence is that the rights involved are of 1864 and to at least 1924. Prior to inception of any of plaintiff's rights, and in 1902, in the state court one of the defendants herein brought a like suit against perhaps all contemporaneous users of the waters; and in the "Stewart decree" therein, priorities and duty were adjudicated. Affirmed on appeal (Farmers', etc., Co. v. Irr. Dist., 14 Idaho, 450, 94 P. 761), new trial denied was followed by reaffirmance on appeal, save new trial was ordered to determine anew the duty of water but not in excess of the maximum theretofore determined; a very unusual and narrow limitation. See Id., 16 Idaho, 525, 102 P. 481, 485.

Thereafter, and July 14, 1913, one of the parties to said suit brought a like suit in said court to determine priorities in respect to appropriations subsequent to said decree, in which many parties to the former suit were made defendants. October 3, 1913, the instant suit was begun, and the complaint, referring to the Stewart decree, alleged plaintiff's rights of user were prior to none therein save perhaps one, viz., the right of the plaintiff in the second suit.

In 1915 plaintiff by its district attorney and district counsel of its reclamation service intervened in said second suit, therein asserting all the rights of user in the instant suit claimed; and in the "Bryan decree" of February 16, 1929, adjudication of priorities including plaintiff's was made. Again and in June, 1931, was affirmance on appeal, save further hearing ordered in respect to three claims including one of plaintiff's, and "as to the duty of water." See Pioneer, etc., Dist. v. American Ditch Ass'n et al., 50 Idaho, 732, 1 P.(2d) 196, 203.

In the meantime had been no move in the instant suit subsequent to complaint filed. But August 11, 1932, was filed this amended complaint making parties all parties and/or their privies in the other suits, subpœna was served, and response was made as before indicated.

It is noted that the complaints herein ignore the second suit aforesaid, and in the amended complaint plaintiff "mends its hold" in respect to priorities. That is to say, though the original complaint admits priority in rights of earlier date than plaintiff's, the amended complaint craftily denies priority in any right, even though 40 years earlier.

In the state court has been no final adjudication in respect to duty of water by the Supreme Court ordered, but from time to time have been annual determinations thereof and the waters distributed accordingly, in the agencies, expenses, and benefits of which the plaintiff has shared.

That res judicata applies to priorities or order of user of the waters by the United States as well as all other parties to the suits in the state court is clear. To protect its property the United States has all the rights of persons, may sue in the state courts or in its own tribunals, and of course is concluded by the decree rendered even as persons are. See Cotton v. U. S., 11 How. 231, 13 L. Ed. 675; Case v. Terrell, 11 Wall. 201, 20 L. Ed. 134; U. S. v. Lee, 106 U. S. 222, 1 S. Ct. 240, 27 L. Ed. 171; New York v. New Jersey, 256 U. S. 296, 41 S. Ct. 492, 65 L. Ed. 937; U. S. v. The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313.

Its intervention in the suit of the Bryan decree was in essence a suit by it begun, for that in a suit to adjudicate priorities or or-

der of user of water, all are actors, and it is immaterial how ranged in the record.

In so far as congressional authority is necessary before any officer may sue or defend in behalf of and bind the United States, when Congress embarks the nation in business or more or less socialistic enterprise like this at bar to supply water to private as well as public lands (Scheer v. Moody (D. C.) 48 F.(2d) 327, 329), ipso facto, the executive is vested with authority to employ all agencies, including courts, reasonably necessary to promote and protect the interests of the body politic. See the Reclamation Act, 43 USCA § 371 et seq.

■ Of its own volition submitting to the jurisdiction of the courts of Idaho, plaintiff is bound by the decree; and, however unsatisfactory the decree may be, it is too late for the United States, as it is for any party, to abandon that forum of its choice, and, in hope of more favorable result, resort to this tribunal.

Moreover, the federal statutes were then as now, and if they did not authorize the intervention in the state court, they do not authorize the instant suit in this court. Whichever horn of the dilemma by plaintiff grasped, the consequence is the same, and dismissal of the suit.

In view of the antiquity of many of the rights involved, the inevitable death and disappearance of witnesses, the prolonged and costly litigation, and the tactics or strategy of the reclamation service analogous to those in the Scheer suit, supra, it would be a clear abuse of judicial process, even if legal, to constrain the parties at further expense, and also other disadvantage to all save the United States, to begin anew and relitigate the issues in this court.

In so far as the issue of duty of water is concerned, in any aspect it is but an incident of priority, viz., the amount of water to which priority extends.

An issue in the priority suits in the state courts, it must be determined in the proceedings pending there. It cannot be split off to sustain a later suit here. The United States must finish there what it started there. In principle it is like to computation of the amount due upon a liability denied, but in action proven.

But how any court can predetermine the duty of water, passeth understanding. So variable are the essential factors of soil, cultivation, skill, crop, weather, time, that omnipotence, but not human wisdom, might solve the problem.

■ A water right is the right, in due order of priority and within the maximum appropriated, to use that amount of water which reasonably suffices for the owner's needs at any particular time. The factors variable, the amount is variable, not only season to season, but day by day, even hour to hour. Consequently it is obvious the court cannot justly prescribe any fixed schedule. It must be left to the honest judgment of the owner in application, subject to control by the court's water master, who interferes in any the owner's abuse, and prescribes limits for immediate use.

This was recognized as the true rule by the Idaho Supreme Court in McGinness v Stanfield, 6 Idaho, 372, 55 P. 1020, 1021 and why, when, and where departed from prior to the suits herein, has not been made known to the court.

Although the foregoing serves to sustain the motions to dismiss, the other grounds aforesaid by them advanced do likewise.

■ Water rights appurtenant to land are of the nature of incorporeal hereditaments and real property.

■ Suits to determine their priorities partake of the quality of real actions, and so far involve a res, that the court first obtaining jurisdiction of them, "the court first seised should proceed to the determination without interference, on the principles now well settled as between the courts of the United States and of the states." Rickey, etc., Co. v. Miller & Lux, 218 U. S. 262, 31 S. Ct. 11, 13, 54 L. Ed. 1032.

Motions granted.