## SAIN et al. v. MONTANA POWER CO.
### No. 1488.

District Court, D. Montana.
Feb. 5, 1934.

E. C. Mulroney, of Missoula, Mont., and S. P. Wilson, of Deer Lodge, Mont., for plaintiffs.

A. N. Whitlock, W. L. Murphy, Walter L. Pope, and John E. Corette, Jr., all of Missoula, Mont., for defendant.

BOURQUIN, District Judge.

This is final hearing in a suit involving the primitive, ancient, and eternal struggle for the life-giving fluid, the water holes and springs in the desert, the streams which make fruitful and to blossom as the rose the waste places of earth.

The parties are some of the appropriators of the water of Rattlesnake creek, one of the more delightful of Montana's many beautiful streams, despite its repellant but "Western" name. As usual, appropriations exceed the flow, and as usual, just apportionment involves difficulties inciting litigation in lieu of sometimes armed foray with spear or gun.

Ignoring nonessentials of strategy, camouflage, and nuisance-value, the gist of the case is whether defendant's change in place of diversion of water inflicts substantial injury on any plaintiff.

The evidence discloses appropriations by defendant in amount 1,184 inches prior to any plaintiff's, 160 inches more, prior to any plaintiff's save one of 45 inches, 775 inches more, prior to any plaintiff's save the aforesaid and one of 145 inches, and some subsequent unnecessary to detail.

The change involved, made in 1902, is from the Mill ditch and the Higgins ditch, both below plaintiffs, to a dam 1¾ miles above the Higgins, 3½ miles above the Mill and 100 feet higher, and above most of plaintiffs.

The defendant is a public utility and now diverts no water save at said dam and to serve the city of Missoula. It appears defendant has not diverted more than 1,112 inches, or 6 inches more than its appropriations by the ditches aforesaid and prior to all plaintiffs.

Above the dam defendant has eight reservoirs, but claims nothing here by reason of any excess water stored. The dam obstructs all flow of the stream save overflow more or less intermittent and which varies as varies the flow and diversion by defendant. Likewise varies the flow below the dam.

Taking the testimony for it and particularly that of defendant's superintendent, when defendant sometimes diverts all flow, the surface flow runs off and the bed of the stream dries to a short distance above the Higgins ditch. There and below, however, the usual subsurface flow emerges, and always affords a surface flow of water at the head of at least the Mill ditch, in amount sometimes 340 inches.

In effect, the subsurface operates as a bypass around plaintiffs' places of diversion, and as a tributary or accretion to the stream above defendant's before the change. This water not available to any plaintiff, but available to defendant at the Mill ditch if not at the Higgins ditch, is by it permitted to waste and its equivalent taken at the dam.

And this consequence of the change is the grievance and injury of which plaintiffs complain. That complaint is justified, grievance and injury real and substantial is clear, plain as a pike staff.

A single illustration suffices.

Assume a flow of 1,000 inches at the dam, defendant's need and diversion 700 inches, and overflow 300 inches. The last enters the subsurface and only emerges where unavailable to any plaintiff but available to defendant. Obviously, had defendant not changed diversion from the ditches to the dam, the 1,000 inches in surface and subsurface flow adown the stream would supply 300 inches to plaintiffs and 700 inches, its need and so the limit of its right, to defendant at the ditches. Therefore, at that time or any other of short-

age, in just apportionment this wasted water is to be charged against defendant, its diversion at the dam limited to its need (in general, always the limit of a water right when others need water, however greater the appropriation), less any substantial flow at the head of the Higgins and/or the Mill ditch, the deduction not to exceed the extent of defendant's resort to the priorities by said ditches obtained.

In so far as diversion at the dam lessens evaporation and absorption, defendant is to be given the benefit when needed.

But that is not all.

 It further appears that in a suit involving these parties and all other appropriators of the water of said stream, in 1903 in the local state court was rendered a decree settling priorities in time and amount, and each party was enjoined from trespass upon any other. And to this day that court maintains and exercises jurisdiction to enforce and execute its decree by its officer (water commissioner) to apportion the water and supervise its use.

If there is any good reason why the parties should invoke the interposition of this court to vindicate rights by the state court adjudicated, it has not been suggested and passeth understanding.

Why a decree, injunction, and execution here, to enforce a decree, injunction, and execution there? And if secured, to enforce them why not a new suit in the state court? And so on ad infinitum, decree upon decree imposed, like Ossa on Pelion piled.

Is not that court able to visit the just penalty on this defendant or any other who in trespass violates the court's decree and injunction, and will it not do so?

To ask is to answer.

And if that court's officer does not justly apportion the water (for is no evidence defendant diverted more than he sanctioned), no doubt the court will apply the proper remedy.

It is true suit may be maintained to execute a decree in another suit in the same or another court. But only when is some valid reason, only when subsequent events interpose obstacles to otherwise execution by the court of the first decree.

That is not this case.

Equity has discretion in the matter of relief, and may grant or deny it unless circumstances convert discretion into duty. Where duty begins, discretion ends. The state court and this are of concurrent jurisdiction, each from the other entitled to the respect and deference proper between equals. That court is competent as this to finish what these parties in it began.

To solicit this court to in effect supersede the state court is an affront to both, whether or not also contempt. Is this court's officer to undo what the state court's officer does, and vice versa?

The practice is bad, breeds conflict, and is intolerable.

So far has it been carried, that in the opinion in Simmons v. Ry. Co., the last of three suits involving the same stream, this court observes the three decrees result in an impasse, nullity. That is, in the first suit A is decreed prior to B, in the second suit B is decreed prior to C, and in the third suit C is decreed prior to A, a triple estoppel; the parties in complete circle back to the starting point!

Moreover, it is settled law that suits to determine priorities in use of water partake of the quality of real actions, and so far involve a res that the court first obtaining jurisdiction of them should proceed to the determination without interference by any other court, on principles well settled between the courts of the United States and of the states. Rickey, etc., Co. v. Miller & Lux, 218 U. S. 262, 31 S. Ct. 11, 54 L. Ed. 1032; U. S. v. American, etc., Ass'n (D. C.) 2 F. Supp. 867.

It is not mere matter of comity but of right.

That is this case. And although neither party objected, it is the duty of the court sua sponte to avoid abuse of its authority, to refrain from invasion of the state court's jurisdiction.

Suit dismissed, without costs.