### SAIN et al. v. MONTANA POWER CO.

No. 1488.

District Court, D. Montana.

Sept. 29, 1937.

S. P. Wilson, of Deer Lodge, Mont., and E. C. Mulroney, of Missoula, Mont., for plaintiffs.

W. L. Murphy, A. N. Whitlock, and Walter L. Pope, all of Missoula, Mont., J. E. Corette, Jr., of Butte, Mont., and J. C. Garlington, of Missoula, Mont., for defendant.

BOURQUIN, District Judge.

Heretofore, the court determined it had jurisdiction of this suit, but that due respect for the state court of earlier jurisdiction then presently controlling and administering the property, subject matter of the suit, required this court in proper exercise of discretion to refuse to proceed; and dismissal was ordered. See (D.C.) 5 F.Supp. 792.

The intermediate appellate court held the dismissal was "on the ground of failure of jurisdiction" herein, that this court had jurisdiction and "instructed" it "to proceed with the cause." See (C.C.A.) 84 F.(2d) 126.

Though not convinced against its will and of the same opinion still, the court proceeds upon pleadings and evidence the same now as before.

In the complaint 32 plaintiffs allege that in 1903 in the state court the rights of these parties in and to the waters of Rattlesnake creek were adjudicated and all parties "perpetually enjoined from in any manner interfering with the rights of each of the other parties as in the decree established" and in hæc verba pleaded; that of defendant's rights one was by means of Mill ditch and two by means of Higgins ditch, and were decreed to be exercised at the head of said ditches and not elsewhere; that subsequent to decree defendant abandoned said rights and ditches and "pretended and assumed" to divert like amount of water higher up the creek, claiming the same as the rights aforesaid; that in 1931–1933 this "attempt" deprived plaintiffs of water which they were entitled to use, to the destruction of plaintiffs' crops and to their injury; that defendant claims the "perpetual right to change the point of diversion" as aforesaid, threatens to perpetually continue the said change, and unless enjoined will there perpetually divert the entire flow of the creek, "to the irreparable damage and injury" of plaintiffs; that defendant's claim is a cloud on plaintiffs' right and title, and its change of diversion is without authority of law and invalid."

The prayer is for adjudication and decree that defendant's rights are junior and inferior to plaintiffs; that defendant's change in diversion has injured plaintiffs; that defendant be enjoined from said change, but, if it has right thereto, it be decreed junior, inferior, and subject to plaintiffs' rights; and that plaintiffs have costs "and such other and further relief as to the court may seem equitable."

The answer admits defendant made the change in diversion and that it claims right to there divert all water in priority to it decreed, but that the change was accomplished prior to the decree in the state court and its claim is restricted within the limits of said decree and to the extent necessary to its requirements to supply Missoula with water; that said suit was tried upon the assumption of all parties that for the purposes aforesaid the water adjudicated to defendant could and would be diverted as it was and is at the said point of change; that the change has neither injured nor damaged plaintiffs; that said change has been open, uninterrupted, adverse and under claim of right for more than 30 years last past, and that plaintiffs are estopped by laches and barred by limitations. The evidence is largely detailed in 5 F.Supp. 792, and from it and the pleadings the court finds that the head of the Mill ditch is below the head of the Higgins ditch, and both are lower down the creek than the point of change in diversion by defendant made; that the point of diversion by plaintiffs is above Mill and Higgins, in part below the point of defendant's change and in part above it; that before 1880 defendant was diverting water to supply Missoula, before 1893 for the same purpose diverted it at a point some 400 feet above the head of Higgins, and in 1902 for the same purpose commenced and to this day continues diversion at the point of change of which plaintiffs

complain; that in Mill and Higgins the water was diverted for power and irrigation, and in 1906 both had ceased operation; that the trial in the state court did not involve the points of diversion of the parties, save incidental, and the court did not determine them; that, in so far as the decree refers to defendant's rights appropriated by Mill and Higgins, it is identification only; that the rights herein involved are as in said decree adjudicated; that the parties, water rights, issues, and relief sought herein are legally the same as in the state court, both being suits to quiet title to said rights and to enjoin interference, save the subordinate and incidental issues herein of construction of the decree and whether defendant's change in diversion violates said decree and injunction and injures plaintiffs; that plaintiffs construe the decree to limit defendant's exercise of priority to the Mill and Higgins ditches, and defendant construes it to authorize diversion of the full amount at the said point of change, even though prejudicial to any plaintiff; that in the state court the suit was not tried on the assumption that defendant could and would divert the water in priority decreed to it at the point of change; that defendant did not abandon any of its rights; that the flow in Mill ditch cannot by gravity discharge in defendant's reservoir of supply, and both Mill and Higgins are below contamination avoided by defendant's change of diversion aforesaid; that, as used by Mill and Higgins, none of the water returned to the creek, even as that used by defendant now does not; that defendant's said change and its operation has not deprived any plaintiff of any water reasonably necessary for use; that defendant claims the right to divert at the point of change the entire amount to it in priority awarded by the decree, even though thereby some plaintiffs may be deprived of water otherwise available and to which they are entitled and in need, but not if thereby the decree and injunction of the state court are disobeyed. And therefrom the court concludes that defendant's motion to dismiss the suit should be granted. It is so ordered. If either party desires any further necessary finding, request thereto may be made.

[redacted] In brief consideration of water rights and suits to adjudicate them, a water right and its exercise are hereditaments, corporeal and incorporeal. Smith v. Denniff, 24 Mont. 20, 25, 60 P. 398, 50 L.R.A. 737, 81 Am.St.Rep. 408. They are real property. Adamson's Case (Adamson v. Black Rock Power & Irrigation Co.), 12 F.(2d) 437 (C.C.A.). Suits to adjudicate them are to quiet title to realty. Rickey Land & Cattle Co. v. Miller & Lux (C.C. A.) 152 F. 11, 15, affirmed 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032. Such suits are not in personam but in rem or quasi in rem, for that, though directed against defendants personally, the real object is to deal with and settle and protect title to and enjoyment of particular property, and to invalidate unfounded claims asserted thereto. And that converts actions otherwise in personam into actions in rem or quasi in rem. See 1 C.J. 929 and cases; 51 C.J. 141, 281 and cases; Pennoyer v. Neff, 95 U.S. 714, 734, 24 L.Ed. 565.

[redacted] Any suit to quiet title to realty acts upon the property. Parker v. Overman, 18 How. (59 U.S.) 137, 141, 15 L.Ed. 318. Therein, so far is it in rem, service may be had by publication if the statutes as in Montana authorize. Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520; Dennison Brick & Tile Co. v. Chicago Trust Co. (C.C.A.) 286 F. 818. The decree therein is likewise in rem. Dennison Brick & Tile Co. v. Chicago Trust Co., supra. By injunction, a court asserts its jurisdiction over the property involved, over the res, and vests it with exclusive right to control and administer it. Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 197, 55 S.Ct. 386, 79 L.Ed. 850. When thus taken into a court's jurisdiction, "that res is as much withdrawn from the judicial power of the other as if it had been carried into a different territorial sovereignty." Kline v. Burke Const. Co., 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. The principle extends to the issues adjudicated and to those ancillary, incidental, and dependent thereto. Wabash Ry. Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Penn General Cas. Co. v. Pennsylvania ex rel. Schnader, supra; 15 C.J. 1162 and cases. This principle applies to water right suits. Rickey Land & Cattle v. Miller & Lux, 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032. Relief is discretionary in equity, and in federal courts "the question of the propriety of its (discretion) exercise in particular circumstances" is always "open."

[redacted] Even where the federal court has acquired jurisdiction prior to the state

court or other state proceedings, the circumstances may require that in wise discretion the former relinquish to the latter. This, out of comity, in order to avoid conflict, and that federal and state tribunals "may co-operate as harmonious members of a judicial system coextensive with the United States." U. S. v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 347, 80 L.Ed. 331. If the relief sought is strictly in personam as for money or injunction, both the federal and state court may have "concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other. * * *

"But, if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, * * * and to protect the judicial processes of the court first assuming jurisdiction, * * * the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." Penn General Cas. Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850. What is that but this case?

■ Obviously, looking through form to substance as equity does, this suit and that in the state court are legally identical in parties, subject-matter, issues, and relief. The latter suit is in final decree and the state court continuously controls the property, regulates its use, administers it, in order to enforce and execute its decree and to afford full relief. Its decree is res judicata here.

■ Why should the federal court again adjudicate rights heretofore adjudicated by the state court, why here quiet title to rights quieted there, why here enjoin what is enjoined there, why here administer water now being administered there, why open such a Pandora's box of evils in violation of settled principles confirmed by the Supreme Court? Of course, were plaintiffs to here secure a decree granting the relief they seek, they would be en-titled to its enforcement by that arm of the court, a water commissioner, which equity has power to appoint. See Montezuma Canal Co. v. Smithville Canal Co., 218 U.S. 371, 385, 31 S.Ct. 67, 54 L.Ed. 1074.

■ Decrees are not sought for themselves alone, but for the fruits of their execution. Otherwise, or if unenforceable, they are futilities and refused by equity. See 21 C.J. 159 and cases.

■ So, too, when public interest requires, the federal court may relinquish its jurisdiction in favor of the state court, provided the private right does not suffer. Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166. In the former opinion (5 F.Supp. 792, 793) the impropriety of this suit, the conflict, the adequacy of relief in the state court, and the affront to both courts (as the Supreme Court in a like case, citation not at hand, characterized the second suit) are sufficiently emphasized, and need naught more here.

■ But it is said the Supreme Court declares that, if an independent suit is by the state permitted subsequent to another suit, it may be maintained in the federal court, and certain cases by the Supreme Court of Montana are said to authorize a subsequent suit like this at bar.

The rule is limited to independent suits, and does not include those in their nature supplementary, dependent, incidental, and ancillary. Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664. And this suit is in analysis nothing but of the latter variety, to construe, enforce, and execute the state court's decree, and to determine the incidental issue of defendant's change of diversion—perhaps in hope to secure a more favorable decree here to be pleaded res judicata there, or to transfer here the administration of the property presently had there.

Adverting to the practice in Montana, in Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 27 Mont. 410, 71 P. 403, a great Chief Justice adhered to the principle that, after injunction granted, another suit for like injunction (an injunction to restrain violation of an injunction) could not be maintained; that the remedy is to enforce the injunction had.

And in Gans & Klein Inv. Co. v. Sanford, 91 Mont. 512, 520, 8 P.(2d) 808, the Chief Justice held in effect likewise, that the decree adjudicating water rights "is not merely a basis for a new procession of water suits."

The Mannix-Thrasher Cases (Mannix & Wilson v. Thrasher), 95 Mont. 267, 273, 26 P.(2d) 373, appear to be suits involving change in diversion of water, brought subsequent to decree in an earlier suit adjudicating the rights to the water. It is not clear that injunction issued in the first suit, or in the second for that matter. Moreover, the latter suits were in the court that rendered the earlier decree, and its jurisdiction was not infringed in any event. Still further, though in form original, the bills in the later suits are in their nature not original but supplemental, involving new facts and to enforce rights adjudicated in the earlier suit, to bring to the court's notice the dereliction of its water commissioner, and to constrain him and the parties to adhere to the decree, to enforce and secure the benefit of the decree. See Story, Eq.Pldgs, §§ 16, 20, 326 et seq. That is to say, however labeled (which goes for nothing), they are ancillary and dependent suits, not independent. The Tucker Case (Tucker v. Missoula Light & R. Co.), 77 Mont. 91, 250 P. 11, was purely in personam for money damages, in the court of the decree, necessarily independent, and interfered none at all with the court's control and administration of the water.

In respect to the allegation that defendant abandoned its rights, the facts therein alleged demonstrate the charge unfounded and mere futile strategy. In respect to the injury by plaintiffs alleged, there is hardly a scintilla of evidence that any plaintiff has been deprived of any water reasonably necessary for his uses (and that is the limit of any water right) by defendant's change in diversion. In so far as any of them testify (Sain, Leaphart, Miller), it is in substance that though sometimes a "little short," whatever that means, they got water right along, enough to keep the land in good growing condition, got along reasonably well, would get a crop, developed orchard, and things were fairly satisfactory.

Any crop loss by Cromwell cannot be imputed to defendant's said change, for that his diversion is above it.

It is notorious that irrigators unreasonably and without right overirrigate, drown out themselves or neighbors, and to some extent that has been the case with plaintiffs.

In their construction of the decree, both parties are wrong. It does not assume either to restrict defendant's rights to diversion at Mills and Higgins, or to extend them to the point of change and/or in full amount, regardless of any interference thereby with any plaintiff's right.

The right to change diversion is created by statute and not by decree, and is limited only by the statutory condition of nonprejudice to any other water user.

If defendant's change at any time future interferes with any plaintiff's right, it violates the decree and injunction, and on complaint will be remedied by the state court, within the rule of Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co. and Gans & Klein Inv. Co. v. Sanford, supra.

The change not having interfered with any plaintiff's use of the water, there has been no occasion for suit, and neither laches nor limitations estop, bar, or threaten them.

In its former decision and opinion (5 F.Supp. 792) the court states it is clear and plain that defendant's change is a real injury to plaintiffs. But close scrutiny of plaintiffs' subsequent statement of the evidence makes manifest that this must be limited to defendant's adverse claim and to the situation which would arise did defendant's diversion interfere with any plaintiff's reasonable use of the water. That defendant construed the decree to permit it to do so, claimed the right and might do so, was an adverse claim, itself a real grievance and injury to some of plaintiffs.

The claim, however, was sub modo, and defendant abandons it upon proper construction of the decree.

Decree as aforesaid, without costs.