## PATTERICK v. CARBON WATER CONSERVANCY DIST. et al.

No. 6638. Decided January 26, 1944. (145 P. 2d 503.)

58

See 16 C. J. S. Constitutional Law, sec. 98. Constitutionality of water control acts, notes, 70 A. L. R. 1274; 78 A. L. R. 834. See, also, 11 Am. Jur. 1034.

*Frank B. Hanson,* of Price, for plaintiff.

*Therald N. Jensen,* of Price, for defendants.

WADE, Justice.

This is an original proceeding in this court seeking a writ of prohibition against defendants to restrain them from making and executing contracts for the repayment of costs for the reconstruction of the Scofield Reservoir Dam in Carbon County, Utah; from calling a special election for that purpose and from doing anything further in connection with said Scofield Reservoir Dam.

The State Legislature in 1941 passed an act entitled "Water Conservatory Act" which is Chapter 99 of the Ses-

sion Laws of Utah 1941, and in U. C. A. 1943 is Title 100, Chapter 11. This act provides for the organizaton of water conservancy districts and defines the purposes and powers thereof. The respondent, Carbon Water Conservancy District, was organized pursuant to this act. Plaintiff admits that all the steps leading to its organization were in conformity with the provisions of this act but attacks the legality of the district on the ground that the act authorizing its organization is unconstitutional.

Plaintiff cites numerous grounds wherein he contends the Constitution has been violated. For the sake of brevity wherever possible we shall consolidate these grounds, and will set out in the opinion only so much of the act and the constitutional provisions as we deem necessary to a decision of the questions involved herein.

It is well established that a court will uphold the validity of an act passed by the legislature wherever possible and will not declare it unconstitutional unless its invalidity is apparent. *People* v. *Letford,* 102 Colo. 284, 79 P. 2d 274; *Miami County* v. *City of Dayton,* 92 Ohio St. 215, 110 N. E. 726; *Lehi City* v. *Meiling,* 87 Utah 237, 48 P. 2d 530. With this principle in mind we shall proceed to examine plaintiff's objections to the act.

The Utah Water Conservancy Act is patterned after the Colorado Water Conservancy Act which embodies many provisions of the Ohio Water Conservancy Act which it found could be applicable to conditions in western states. New Mexico used many of the provisions of both the Colorado and Ohio Water Conservancy Acts in its Water Conservancy Act. Ohio, Colorado and New Mexico have had occasion to test the constitutionality of their respective Water Conservancy Acts and in all instances they have been upheld by the courts of last resort in those states. Because many of the questions presented in those cases are presented in the instant case we shall have occasion to refer to them frequently.

Plaintiff contends that Sec. 100-11-7, U. C. A. 1943, which precludes an appeal from the order of the court denying or establishing a District and Secs. 100-11-29 and 30, U. C. A. 1943, which fail to provide for an appeal from the order of the District Board violate Sec. 9, Art. 8 of the Utah Constitution which provides that:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. * * * "

Sec. 100-11-7, U. C. A. 1943, provides that:

"At any time after the filing of a petition for the organization of a conservancy district, and not less than thirty days prior to the time fixed by the order of court for the hearing upon said petition, and not thereafter, a petition may be filed in the office of the clerk of the court wherein the proceeding for the creation of said district is pending, signed by not fewer than twenty per cent of the owners of the irrigated lands in said proposed district, but not embraced within the incorporated limits of a city or town, who have not signed the petition for creating such district, the aggregate assessed value of which, together with improvements, is not less than twenty-five thousand dollars, and also signed by not fewer than five per cent of owners of non-irrigated lands or lands embraced in the incorporated limits of a city or town, all situated in the proposed district who have not signed the petition for creating such district, the aggregate assessed value of which, together with improvements, is not less than ten thousand dollars, protesting the creation of said district. * * *

"If the court shall find from the evidence that said protesting petition is signed by the requisite numbers of owners of lands, and of the requisite values, the court shall forthwith dismiss the original petition praying for the creation of the district. * * *

"Any owner of real property in said proposed district not having individually signed a petition for the organization of a conservancy district, and desiring to object to the organization and incorporation of said district, may on or before the date set for the cause to be heard, file objection to the organization and incorporation of the district.

"Such objection shall be limited to a denial of the statements in the petition and shall be heard by the court as an advanced case without unnecessary delay.

"Upon the said hearing, if it shall appear that a petition for the organization of a water conservancy district has been signed and pre-

sented, as hereinabove provided, in conformity with this act, and that the allegations of the petition are true, and that no protesting petition has been filed, or if filed has been dismissed as hereinabove provided, the court shall, by order duly entered of record, adjudicate all questions of jurisdiction, declare the district organized and give it a corporate name, by which in all proceedings it shall thereafter be known, and thereupon the district shall be a political subdivision of the state of Utah, and a body corporate with all powers of a public or municipal corporation. * * *

"If the court finds that no petition has been signed and presented in conformity with this act, or that the material facts are not as set forth in the petition filed, it shall dismiss said proceedings and adjudge the costs against the signers of the petition in such proportion as it shall deem just and equitable. No appeal or writ of error shall lie from an order dismissing said proceedings; but nothing herein shall be construed to prevent the filing of a subsequent petition or petitions for similar improvements or for a similar water conservancy district * * *.

"If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the said district against all persons except the state of Utah, in an action in the nature of a writ of quo warranto * * *."

The statements in the petition to organize a district referred to above and on which the court is required to make findings are set forth in Sec. 100-11-4, U. C. A. 1943. They are:

"(1) The proposed name of said district.

"(2) That property within the proposed district shall be benefited by the accomplishment of the purposes enumerated in Section 3 of this act. [Conserving, developing and stabilizing supplies of water for domestic, irrigation, power, manufacturing and other beneficial uses.]

"(3) A general description of the purpose of the contemplated improvement and of the territory to be included in the proposed district. Said description need not be given by metes and bounds or by legal subdivisions, but it shall be sufficient to enable a property owner to ascertain whether his property is within the territory proposed to be organized as a district. Said territory need not be contiguous, pro-

vided it is so situated that the organization of a single district of the territory described is calculated to promote one or more of the purposes enumerated in Section 3 of this act.

"(4) The assessed value of all irrigated land within the boundaries of the proposed district.

"(5) A general designation of divisions of the district and the number of directors of the district proposed for each subdivision.

"(6) Said petition shall pray for the organization of the district by the name proposed."

It is apparent from the above that the act contemplates a determination by the court of the essential elements of the petition for organization of the district and if a protest is filed it contemplates the adjudication of controversial issues between adverse parties. The court must hear evidence and determine the facts and from those facts either allow or dismiss the petition asking the creation of the district. The act provides that the order of the court allowing or dismissing the petition shall be final. Once the court has acted either allowing or dismissing the petition the right of the parties have been determined as to the issues involved. As has been said by this court in *Lukich* v. *Utah Construction Co.*, 46 Utah 317, 150 P. 298, "A judgment is the final determination of the rights of the parties." Since the act itself declares that if an order is entered establishing the district "such order shall be deemed final," the order entered by the court is a final judgment, and insofar as the act attempts to abrogate the right of appeal from such a judgment it violates Sec. 9, Art. 8 of the Constitution of the State of Utah. However, this constitutional provision applies only to appeals from final judgments of district courts. In the absence of constitutional or statutory provisions, due process of law does not require that appeals be granted in civil cases. As stated in *People* v. *Lee,* 72 Colo. 598, 213 P. 583, 588:

"There is no constitutional right of appeal or to a writ of error. Speaking of the establishment of drainage districts, it is said in 19

C. J. 667, that the Legislature may, in its discretion, and in the absence of constitutional inhibition, limit the right of appeal or deny it altogether."

Sections 100-11-29 and 30, U. C. A. 1943 concern the acts of the district board and not that of the court, the only duty which the court has to perform is to sign the orders of the district board. This is a purely minis- ■ terial duty. It is apparent therefore that it was within the legislative discretion to refrain from granting a right of appeal from such orders of the district board.

Plaintiff contends that the Water Conservancy Act violates the "due process" clause in that it fails to give due notice to bring either the property or property ■ owners into court and subject their property to taxation.

Sec. 100-11-6, U. C. A. 1943, provides that:

"Immediately after the filing of such petition, the court wherein such petition is filed or a judge thereof in vacation, shall by order fix a place and time, not less than sixty days nor more than ninety days after the petition is filed, for hearing thereon, and thereupon the clerk of said court shall cause notice by publication to be made of the pendency of the petition and of the time and place of hearing thereon; the clerk of said court shall also forthwith cause a copy of said notice to be mailed by United States registered mail to the board of county commissioners of each of the several counties having territory within the proposed district."

Sec. 100-11-2, U. C. A. 1943, provides that:

" * * * Wherever the term 'publication' is used in this act and no manner specified therefor, it shall be taken to mean once a week for three consecutive weeks in at least one newspaper of general circulation in each county wherein such publication is to be made. It shall not be necessary that publication be made on the same day of the week in each of the three weeks, but not less than fourteen days (excluding the day of the first publication) shall intervene between the first publication and the last publication, and the publication shall be complete on the date of the last publication."

Section 100-11-7, U. C. A. 1943, above quoted, provides for the filing of a petition protesting the creation of the

district and for the dismissal of the original petition in case it is signed by the requisite number of land owners of the required value. That section also provides that any land owner within the district may controvert the facts alleged in the original petition and in case the court finds that the facts proved are not sufficient under the statute to justify the creation of the district that the original petition shall be denied.

As we have already shown, the proceedings creating a Water Conservancy District is a judicial proceeding. The sections quoted above provide for notice of hearing to all persons interested. Such persons are given an ■ opportunity to come into court and object to the creation of the district, if they so desire. This is due process of law. As the Ohio court said in construing the constitutionality of its Water Conservancy Act in the case of *Miami County* v. *City of Dayton,* 92 Ohio St. 215, 110 N. E. 726, on pages 729 and 730:

"The 'due process' clause has been much abused and stretched to limits never designed by the Constitution makers. But it must be observed that it is not the deprivation of property that is prohibited by this amendment, but the deprivation of property *without due process of law.* Full provision is made at every stage of the conservancy act, from the time of the filing of the petition to create a conservancy district until the last step is taken, for the assertion of any and all rights by any and all parties affected by this act. Every person substantially affected is given a 'day in court' from the time of the organization of the district until the proposed improvement is completed.

\* \* \* \*

"The conservancy act providing what the petition must contain [the provisions in the Ohio Conservancy Act are substantially like the provisions of Sec. 100-11-4, U. C. A. 1943], it follows that upon hearing the court must find the allegations of the petition to be true; that is, 'The necessity for the proposed work and that it will be conducive to the public health, safety, convenience or welfare.'

"Throughout the entire act ample provision is made for any objector to appear, whether he is a party to the record or not, either before the court at the time of the organization, or before the board of directors after the organization, or the board of appraisers, and present

■

his objections, either as to his being within the district, as provided by section 29, which he may do after the district is created, or as to the amount of the assessment upon his lands, or as to any other right that he may believe to have been violated, and have the same heard and determined.

"In this view of the case it is difficult to seriously point out where and how there has not been accorded to the private citizen, as well as to the public, every substantial consideration of his rights as recognized by the phrase 'due process of law.'"

Plaintiff also contends that the "due process" clause is violated because there is no provision by which the court can modify the boundaries of the proposed district, nor can it determine that individual properties or sections of properties will not benefit by the creation of the district.

Sec. 100-11-7, U. C. A. 1943, provides:

"Upon the said hearing, if it shall appear that a petition for the organization of a water conservancy district has been signed * * * and that the allegations of the petition are true * * * the court shall * * * adjudicate all questions of jurisdiction, declare the district organized and give it a corporate name * * *.

"If the court finds that * * * the material facts are not as set forth in the petition filed, it shall dismiss said proceedings * * *."

As we have shown above, one of the material facts which the court must find true is:

"That property within the proposed district will be benefited by the accomplishment of the purposes enumerated in Section 3 of this act."

The purposes enumerated in Sec. 3 of this act are conserving, developing and stabilizing supplies of water for domestic, irrigation, power, manufacturing and other beneficial uses. It is apparent therefore that the act makes provision for a hearing as to whether or not lands included in the proposed boundaries will be benefited. In the case of *San Saba County Water Control and Improvement District No. 1*

*et al.* v. *Sutton et al.*, 12 S. W. 2d 134, 70 A. L. R. 1255, the Texas Commission of Appeals had to determine whether the act providing for the organization of water control and improvement districts was void under the "due process of law" clauses of the federal and state constitutions because the act did not provide for an adequate hearing to landowners in the district with reference to benefits and boundaries. The statute involved in that case was Vernon's Ann. Texas Civil Statutes, Art. 7880—19, which provides:

"If it shall appear on hearing by the commissioners' court that the organization of a district as prayed for is feasible and practicable, that it would be a benefit to the land to be included therein, or be a public benefit, or utility, the commissioners' court shall so find and grant the petition. If the court should find that such proposed district is not feasible or practicable, would not be a public benefit or utility, * * * or is not needed, the court shall refuse to grant the petition."

The Court of Civil Appeals, 8 S. W. 2d 319, had decided that under this section there was no discretion in the commissioners' court to change the boundaries in any respect; that it was required to grant or refuse the petition depending upon whether or not it found the district was feasible and practicable, would be a benefit to the land to be included therein or be a public benefit or utility. In reversing the judgment of the Court of Civil Appeals, the Texas Commission of Appeals said:

"This interpretation is not an unreasonable one * * * but it is not the only reasonable interpretation. The language is likewise susceptible of another meaning, and that is that the finding that the district is a public benefit or utility includes the finding of benefits to each and every tract included in the project. For in determining what is a public benefit, necessarily the rights of the individuals composing that public enter into the consideration. * * *

"It is true the act does not specifically give the commissioners' court the power to grant the petition after having found that any part of the lands included therein would not be benefited, but rather it appears to be the duty of the court to refuse to grant the petition in such a case. This would not render the law repugnant to the due process clause, since to refuse the petition would be full relief to the complainant."

Although the Texas statute does not read like ours, its provisions insofar as what may be determined by the court at the hearing relating to the organization of the district are similar, and individual landowners have just as much protection in determining their rights. See, also, *People* v. *Lee,* supra. Under Sections 100-11-29 and 30, U. C. A. 1943, the Board is given the power upon petition to change the boundaries by the inclusion or exclusion of lands.

Applicant further attacks the constitutionality of ▮▮▮ the act on the ground that it violates Sec. 18, Art. 8, of the Constitution of Utah which provides:

"The style of all process shall be, 'The State of Utah,' and all prosecutions shall be conducted in the name and by the authority of the same."

We have held the above provision does not apply to matters in the nature of civil proceedings. See *Skeen* v. *Paine,* 32 Utah 295, 90 P. 440. In the case of *People* v. *Lee,* supra, a case in which the constitutionality of the Colorado Water Conservancy Act was attacked, the court, in determining this contention on a constitutional provision similar to ours, said:

"On the same day that the petition was filed in the district court, the court ordered the publication of the notice,* * *. The notice was duly published. It was not given in the name of the people, and this fact gives rise to the second contention of plaintiff, namely, that the notice is a 'process' within the meaning of section 30 of article 6 of the Constitution of the state of Colorado, which provides that 'all process shall run in the name of the "People of the State of Colorado," ' and that, therefore, the notice was void. This contention cannot be sustained, for we hold that the notice in question was not a 'process' within the meaning of the constitutional provision cited, and was not, therefore, vitiated by the fact that it did not run in the name of the people."

The court then goes on to explain that by the word "process" as used in the constitution is meant that which at

common law in England would have run in the name of the King.

Plaintiff assails the validity of Sec. 100-11-15, 11, 12 U. C. A. 1943, which reads:

"In addition to the other means of providing revenue for such districts as herein provided, the board shall have power and authority to levy and collect taxes and special assessments for maintaining and operating such works and paying the obligations and indebtedness of the district by any one or more of the methods or combinations thereof, classified as follows:

"Class A. To levy and collect taxes upon all property within the district as hereinafter provided.

"Class B. To levy and collect assessments for special benefits accruing to property within municipalities for which use of water is allotted as hereinafter provided.

"Class C. To levy and collect assessments for special benefits accruing to lands within irrigation districts for which use of water is allotted as hereinafter provided.

"Class D. To levy and collect assessments for special benefits accruing to land for which use of water is allotted as hereinafter provided."

It is plaintiff's contention that the above section violates Sec. 26, Art. 6 of the Constitution of Utah which provides that:

"The Legislature is prohibited from enacting any private or special laws in the following cases:   *   *   *

"8. Assessing and collecting taxes.   *   *   *

"16. Granting to an individual, association or corporation any privilege, immunity or franchise."

In Sec. 100-11-1, U. C. A. 1943, is found the legislative declaration of policy of the Water Conservancy Act under which water conservancy districts are to be organized. This declaration reads as follows:

"It is declared that to provide for the conservation of the water resources of the state of Utah and for the greatest beneficial use of

water within this state, the organization of water conservancy districts and the construction of works as herein defined by such districts are a public use and will:

"(a) Be essentially for the public benefit and advantage of the people of the state of Utah.

"(b) Indirectly benefit all industries of the state.

"(c) Indirectly benefit the state of Utah in the increase of its taxable property valuation.

"(d) Directly benefit municipalities by providing adequate supplies of water for domestic use.

"(e) Directly benefit lands to be irrigated from works to be constructed.

"(f) Directly benefit lands now under irrigation by stabilizing the flow of water in streams and by increasing flow and return flow of water to such streams.

"(g) Promote the comfort, safety and welfare of the people of the state of Utah, and it is therefore declared to be the policy of the state of Utah:

"(1) To control, make use of and apply to beneficial use all unappropriated waters in this state to a direct and supplemental use of such waters for domestic, manufacturing, irrigation, power and other beneficial uses.

"(2) To obtain from water in Utah the highest duty for domestic uses and irrigation of lands in Utah within the terms of interstate compacts or otherwise.

"(3) To cooperate with the United States and agencies thereof under the federal reclamation laws or other federal laws now or hereafter enacted and to construct and finance works in the state of Utah as herein defined and to operate and maintain the same.

"(4) To promote the greater prosperity and general welfare of the people of the state of Utah by encouraging the organization of water conservancy districts as provided in this act."

From the declaration of policy it is evident that the Water Conservancy Act is intended to apply to all portions of the state and is available to all persons seeking to take advantage of its provisions. Such a law is a general and not a special law. This court in *Lehi City* v. *Meiling,* 87 Utah 237;

48 P. 2d 530, wherein a similar objection was made to the Metropolitan Water District Act held that the Act was a general and not a special law and therefore did not violate Sec. 26, Art. 6 of our Constitution. The Metropolitan Water District Act is analogous in this respect to the Water Conservancy Act. The Water Conservancy Act contemplates organization of districts for a public purpose; that is, the control and conservation of water which will benefit the community as a whole. In this respect it is different from drainage and irrigation districts which contemplate that benefits shall inure to particular lands. The Water Conservancy District, when organized, is a public agency. Sec. 100-11-7, U. C. A. 1943, provides that when it is organized it

" * * * shall be a political subdivision of the state of Utah and a body corporate with all the powers of a public or municipal organization."

This exact wording was used in the Colorado Water Conservancy Act, Chap. 266, Sec. 7, Colorado Session Laws, 1937. The Colorado court in the case of *People* v. *Letford*, 102 Colo. 284, 79 P. 2d 274, 282, interpreted this to mean that a water conservancy district was a quasi-municipal corporation. In arriving at this conclusion the Colorado court quoted extensively from our case of *Lehi City* v. *Meiling*, supra. It said:

"The basis for this conclusion is well exemplified by the following excerpt from the majority opinion of the Supreme Court of Utah in the case of Lehi City v. Meiling * * *.

" 'A Metropolitan Water District is not a "municipal corporation" within contemplation of the Constitution, but is a public agency or entity created for beneficial and necessary public purposes. Its corporate structure is substantially the same as that of the Metropolitan Water District of California, and other agencies of that state which have been held valid as public and quasi-municipal corporations or districts. Wheatley v. Superior Court in and for Napa County, 207 Cal. 722, 279 P. 989.

" 'The characterization "quasi-municipal" we think accurate. The water district is not a true municipal corporation having powers of

local government, but is an agency of the state vested with some of the powers and attributes of a municipality; hence it is not a municipal corporation but is quasi-municipal. "Quasi" is defined as follows in 51 C. J. 119: "A Latin word, in frequent use in the civil law, signifying 'as if, almost.' It marks the resemblance and supposes a little difference between two objects." ' "

The Colorado court then goes on to say:

" * * * we believe the designation 'quasi-municipal corporation' technically and aptly characterizes the water conservancy districts sanctioned by our Water Conservancy Act and so such districts will be designated as quasi-municipal corporations, designed for state purposes as distinguished from private or local municipal purposes in the proprietary sense. * * *."

It follows that Sec. 100-11-15 does not violate Sec. 26, Art. 6 of the Constitution of Utah since a water conservancy district is not organized under a special law and being a quasi-municipal corporation formed for public purposes it is within the discretion of the legislature ▬▬ to grant it any powers, not expressly inhibited by the Constitution to further such purposes, including the power of taxation. It is the public purposes for which a water conservancy district is organized that distinguishes it from drainage or irrigation districts. The public purposes for which a water conservancy district is organized inures to the benefit of the public generally and therefore the public can be charged for such benefits through general taxation. See *Lehi City* v. *Meiling,* supra; *People* v. *Letford,* supra; *Orr* v. *Allen,* D. C.; 245 F. 486. Class A of Sec. 100-11-15 is such a tax. Classes B, C and D refer to taxes to be imposed for special benefits. Sections 100-11-17, 100-11-18 and 100-11-19 provide for the voluntary application of municipalities, irrigation districts or individuals for the special benefits they wish to obtain. These sectons contain provision for notice to all persons interested and for hearing before the Board. Sec. 100-11-21 provides for hearing of objections to assessments to be levied and for notice by publication to all persons interested. It also contains a provision for appeal to the District Court

from the findings of the Board. These sections fully provide for all the safeguards of a party's rights. Should a board act in a manner which would be unconstitutional there is nothing in the Act itself which would preclude a person aggrieved from resorting to the courts to have his rights protected.

Plaintiff's contentions that Sec. 5, Art. 11 of the Utah State Constitution which provides that: "Corporations for municipal purposes shall not be created by special laws"; Sec. 6, Art. 11, which provides that: "No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply  *  *  *"; and Sections 3 and 4 of Art. 14, which provide that "No debt in excess of the taxes for the current year shall be created  *  *  *  by any city, town, or village, or any subdivision thereof in the State; unless the proposition to create such debt shall have been submitted to a vote  *  *  *" and " *  *  *  No city, town, school district or other municipal corporation, shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein  *  *  *" are violated have no merit as these constitutional inhibitions apply only to cities, towns and villages and subdivisions of such cities, towns or villages, and do not apply to water conservancy districts which are not municipalities within the contemplation of that term as used in the Constitution. A water conservancy district is an arm of the government separate and distinct from any municipality, with powers and rules of its own, and the mere fact that its territorial boundaries may encompass the territorial boundaries of a municipality does not make it a part of the city. Its powers and objectives are distinct and separate. See *Lehi City* v. *Meiling*, supra; *People* v. *Lee*, supra.

Plaintiff contends that Sec. 100-11-4, U. C. A. 1943, violates the constitutional limitations set forth in Sec. 24,

Art. 1, of the Utah State Constitution, which reads:
"All laws of a general nature shall have uniform
operation" because it requires the consent of all
municipalities whose population is over 25,000 before it
can be included within a district, whereas the consent of
cities whose population is under 25,000 need not be obtained. Plaintiff argues such classification is arbitrary and
unreasonable, especially in view of the fact that most cities
in Utah have a population of less than 25,000.

Cities having a population of more than 25,000 are capable
of and usually do build and maintain their own projects for
flood control and water conservation; cities of less than
25,000 are usually unable to finance such projects. It is
our opinion that the legislature was not arbitrary in providing that the consent of municipalities whose population
is over 25,000 must first be obtained before being included
in a district. As stated in 16 C. J. S., Constitutional Law,
§ 489, page 956:

" * * * if the legislature has power to deal with the subject matter of the classification, and there is a reasonable ground for the classification, and the law operates equally on all within the same class, it is valid, even though the act confers different rights or imposes different burdens on the several classes. * * *."

Plaintiff further contends that Sec. 2, Art. 1 of the Utah
State Constitution which provides that: "All political power
is inherent in the people; and all free governments
are founded on their authority for their equal protection and benefit, and they have the right to alter
or reform their government as the public welfare may require" is violated by Sec. 100-11-4 and Sec. 100-11-7, U.
C. A. 1943, because these sections preclude owners of property whose assessed valuation is less than $300 to act on
petitions either for or against a proposed conservancy district.

The legislature had the power to create a water conservancy district by its own fiat. It need not have given any
individual  or group the right to petition for the creation

of a district. It was within its discretion to determine what qualification, if any, a petitioner for the creation of a district must have, since the petition for the formation or the formation of the district itself do not affect any property rights. Had the legislature created the district it could have provided for a tax on all property within the district to pay for the costs and maintenance of the project. See In re *Proposed Middle Rio Grande Conservancy District,* 31 N. M. 188, 242 P. 683, at page 689, in which the court in determining that a provision in its water conservancy act that only resident freeholders could sign the petition for the formation of the district was not unconstitutional quotes with approval the following statement of the California Supreme Court deciding a similar question in the case of In re *Bonds of the Madera Irrigation District,* 92 Cal. 296, 28 P. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106:

" 'It is objected to this, that it is placing in the hands of those not interested the power of imposing a burden upon the owners of the land, who may be a small minority of the electors within that district, or who may even be nonresidents of the district. This, however, is a matter which was addressed purely to the discretion of the Legislature. Whether such a petition should be made by the owners of a fixed proportion of the land, as was required in the reclamation law, or whether there should be any qualification to the petitioners, or whether there should be any limit to the expenses which they were authorized to incur for the purposes of the improvement, are questions which were solely for the consideration of the Legislature. * * * It must be observed, however, that this petition has no binding operation, but is merely the initiatory step which gives to the board of supervisors a jurisdiction to act upon the expediency or policy of authorizing the creation of the district.' "

Plaintiff argues numerous other grounds wherein he contends the Water Conservancy Act violates the Constitution. He cites no cases in support of his arguments, and it would unduly lengthen this opinion, which is perhaps already too prolix, to answer all of his contentions. Suffice it to say we have examined them and found them without merit.

It is our opinion that the alternative writ of prohibition heretofore issued should be recalled, although we have found

that portion of Sec. 100-11-7, denying the right of appeal is unconstitutional, it is a provision easily separable from the rest of the section and act and does not affect any of its provisions. See *Orr.* v. *Allen,* D. C. 245 F. 486. This is true especially in view of Sec. 100-11-40, U. C. A. 1943, wherein the legislature has stated that should any part of the act be found unconstitutional the remainder should not be affected, and that every part of the act would have been passed by the legislature irrespective of any part which might be declared invalid or unconstitutional.

The writ is denied. The alternative writ of prohibition heretofore issued is recalled with costs to defendants.

LARSON and McDONOUGH, JJ., concur.

WOLFE, Chief Justice.

I concur. There is, however, one issue which I believe warrants further consideration.

Under the Act a proceeding to have a district organized can be initiated by a small minority of the land owners within the proposed district. The plaintiff contends that since such a minority may initiate the proceedings, due process of law requires that each other land owner within the proposed district be given: (1) an opportunity to be heard on the question of whether his land should be included in the district and on the assessment; and (2) an opportunity to vote or otherwise be heard on the question of whether the contemplated district should be organized at all, i. e., to have it determined whether the majority of the land owners want such a district.

Section 100-11-7 provides that on or before the date set for the hearing on the petition for the organization of the district, any individual land owner may deny any allegation of the petition. Section 100-11-4 provides that the petition for the organization of a district shall set forth that the property within the proposed district will be benefited by the accomplishment of the purposes enumerated in

Section 3 of the Act. Since any land owner may deny this or any other allegation in the petition, each land owner has a chance to protest the inclusion of his land in the district. The opinion of Mr. Justice Wade demonstrates that the notice and opportunity to be heard in this regard are adequate. I do not understand the plaintiff to contend otherwise.

The plaintiff does strenuously argue that the act fails to provide for the giving of notice so that the objecting land owners may voice their disapproval, and if the objectors are sufficient in number, defeat the organization of the district. This, he urges, renders the Act unconstitutional for it permits a small minority to have a district organized even though the majority of the land owners affected do not want such a district. In making this argument—and a substantial portion of his brief was devoted to it—the plaintiff has assumed that due process of law requires that land owners whose lands are likely to be embraced by the district, be given a chance to determine whether or not they want such a district. This, however, is not the law.

In upholding the constitutionality of the New Mexico Conservancy Act, the Supreme Court of New Mexico held, in In re *Proposed Middle Rio Grande Conservancy District*, 31 N.M. 188, 242 P. 683, that the Legislature could by legislative fiat create such a district and declare the benefits; that no constitutional rights would be violated so long as notice and hearing were given on the amount of the assessments. This holding is in accord with principles discussed in several opinions of the United States Supreme Court. In *Goodrich* v. *City of Detroit*, 184 U. S. 432, 22 S. Ct. 397, 46 L. E. 627, the court held that the owners of lands which may be assessed to pay for local improvement need not be given notice of the proceedings to make the improvements, in order to constitute due process of law, if none of their property is condemned to make the improvement and they have notice and an opportunity to be heard on the question of the assessment of their property. It has also been held that notice

of a proceeding merely to determine whether the contemplated improvement should be made is not required by due process of law; hearing on the assessment being sufficient. *Chicago, M. St. P. & P. R. Co.* v. *Risty,* 276 U. S. 567, 48 S. Ct. 396, 72 L. Ed. 703; *Utley* v. *City of St. Petersburg,* 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155, dismissing appeal 111 Fla. 844, 149 So. 806, rehearing denied 292 U. S. 604, 54 S. Ct. 712, 78 L. Ed. 1466.

It becomes evident that due process requires only that each land owner be given notice and a hearing before his lands are included within the boundaries of the district and before they are assessed for making the proposed improvement. He has no constitutional right to require a vote to determine whether the majority want such an improvement constructed. This latter is purely a question of legislative policy. A district could be organized without notice or hearing so long as each land owner was given a hearing on the question of whether his lands have been benefited and should be assessed to pay for the said improvement.

While, as above indicated, due process does not require that affected land owners be given a chance to vote on the desirability of the constructing of the proposed improvement, it certainly is consistent with our principles of government to follow such a procedure. Thus before organizing conservancy districts and making other improvements which will be paid for by assessing the lands benefited, it is not surprising that legislatures often provide a procedure by which the affected land owners can voice their disapproval, and if the objectors are sufficient in number, defeat the construction of the proposed improvement.

Section 100-11-7 purports to provide such a procedure. After a petition for the organization of a district is filed, objectors are given the right to file a protesting petition. If the protesting petition is signed by the requisite percentage of land owners, the proceeding to organize a district must be dismissed by the court. The plaintiff urges that as a practical matter objecting land owners could

not file this protesting petition because of the failure of the Act to require the giving of notice that a petition for the organization of the district is pending. It should, however, be noted that Section 100-11-6 requires the Clerk of the Court to publish notice of the pendency of the petition and notice of the time and place of hearing thereon. Certainly if the manner of and the time for giving notice were otherwise sufficient, it could not be successfully contended that notice that a petition was pending would not put objecting land owners on notice that they must file their objecting petition or waive their right to do so.

It is not seriously contended that notice by publication would not suffice. The contention that the time allowed between the giving of notice that a petition is pending and the time when the protesting petition must be filed is unreasonably short warrants further comment. Under Section 100-11-6 the judge must set the hearing on the petition for not less than 60 days nor more than 90 days from the date when it is filed. Section 100-11-2 provides that notice by publication must be published once a week for three consecutive weeks and that not less than 14 days must intervene between the first and the last publication. Section 100-11-7 provides that this protesting petition must be filed at least 30 days prior to the date set for the hearing. Thus if the court were to set the hearing for 60 days from the date of the filing of the petition and the clerk were to start publication of notice the next day, at least 15 days would elapse before publication were completed. The protest petition, which must be filed not less than 30 days prior to the date set for the hearing, would then have to be filed within the next 15 days or it would be too late. Where the proposed district was large and embraced lands owned by many individuals scattered throughout several counties, it may well be that this would not be adequate time to permit the protestors to sign and file a petition. There may, on the other hand, be a petition for the organization of a small district in which there were fewer land owners so that 15 days

or even less would be adequate time to permit the requisite percentage of protesting land owners to sign and file their petition.

The trial court, in its discretion, is authorized to set the hearing as much as 90 days from the date of the filing of the initiating petition. By so doing the trial court could require the giving of as much as 45 days notice. This would probably be sufficient time in all cases. Thus, in a given case, the trial judge under the wording of the Act, could set the hearing so that there would not be sufficient time between notice and the time when the protest petition must be filed to give the protestors a chance to be heard, or he could so set the date of hearing that the time allowed for filing the protest petition would be adequate. Obviously the Legislature intended to permit protestors to file such a protesting petition. But it also did not wish to have the hearing for the establishment of the district delayed longer than necessary—and directed that the district court hear the petition as an advanced case. See Section 100-11-7. The powers given to the district court are designed to be flexible so that both of these intentions could be effectuated. Where the district is small, the hearing may be set at 60 days thus speeding the hearing; where the district is large the hearing may be set as much as 90 days from the date the petition is filed thus allowing more time to file protests. But in any event the protesting land owners are to be given a chance to protest. If the trial judge were to set the hearing so that the time allowed for filing the protesting petition would be unreasonably short, it would be an abuse of discretion, for by so doing he would defeat the legislative intent. But since the Legislature could establish such districts by legislative fiat, without notice or hearing on whether the improvement should be made, it would not deprive the owners of due process of law. Nor would it render the Act unconstitutional if the time allowed were to prove to be inadequate for, in addition to this chance to protest, the act provides a procedure by which each land owner can be

heard on the question of whether his lands should be included and assessed to pay for the proposed improvement.

MOFFAT, Justice (dissenting in part and concurring in part specially).

The last paragraph of Sec. 100-11-7, U. C. A. 1943, provides:

"If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the said district against all persons except the State of Utah, in an action in the nature of a writ of quo warranto, commenced by the attorney general within three months after said decree declaring such district organized as herein provided, and not otherwise. The organization of said district shall not be directly nor collaterally questioned in any suit, action or proceeding except as herein expressly authorized."

Art. VIII, Sec. 9, of the Constitution of the State of Utah, among other things, provides:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court."

The prevailing opinion intimates, but whether or not it definitely holds that part of Sec. 100-11-7, U. C. A. 1943, above quoted unconstitutional, certainly it is not emphatically stated. If such is the intention of the prevailing opinion, viz., to hold the section unconstitutional, I concur therein to that extent.

I withhold further comment upon the opinion except to reaffirm the position taken in my dissenting opinion in the case of *Lehi City* v. *Meiling, City Recorder*, 87 Utah 237, 48 P. 2d 530, 552, with the added comment that I think Chapter 11 of Title 100, U. C. A. 1943, contains many objectionable provisions, other than contained in the "Metropolitan Water District Law," when measured by the terms of the State Constitution.

One may be cited as illustrative: The last sentence of the paragraph of Sec. 100-11-7 above quoted, reads:

"The organization of said district shall not be directly nor collaterally questioned in any suit, action or proceeding except as herein expressly authorized."

The latter part of Sec. 11, Art. I, of the State Constitution provides:

" * * * and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

It is interesting to observe that in the Metropolitan Water District case, supra, the only law question presented by the pleadings was whether Mr. Meiling, City Recorder of Lehi City, should be required to certify an ordinance duly passed by the City Council. This question decided, the balance of the opinion is pure dicta. Dicta, however, soon grows up to binding opinion and law. For example, Colorado in discussing their "Water Conservancy Act" *(People* v. *Letford,* 102 Colo. 284, 79 P. 2d 274) cites and quotes from the Utah Metropolitan Water District opinion, and now in turn this court cites and quotes from the Colorado opinion in support of the Utah Water Conservancy Act.

Flexibility, adaptability, development and stability of the law are desirable. The paths of growth and adaptability are often devious, but should not be used to evade constitutional provisions. Further discussion or comment I reserve until the application of the law to the facts presents another problem.