CALDWELL, State Engineer, v. ERICKSON, District
Judge, et al.

No. 3862. Decided January 26, 1923. (213 Pac. 182.)

1. WATERS AND WATER COURSES—ENGINEER'S JURISDICTION OF
"WATERS OF STATE" EXTENDS TO "WATERS IN STATE," INTER-
CHANGEABLE TERMS. In Laws 1919, c. 67, § 7, creating the office
of state engineer and fixing the term and defining his duties,
the use of the word "of" instead of "in" in the phrase, "He
shall have general administrative supervision of the waters of
the state," does not limit the engineer's jurisdiction to public
waters or waters belonging to the state; such a construction
not being warranted by the general scope and purpose of the
act when considered as a whole, the words "waters of the state"
and "waters in the state" being interchangeable terms and
meaning the same.

2. EVIDENCE—COMMON KNOWLEDGE THAT STREAMS HAVE BEEN SUB-
JECT OF LITIGATION AND THAT COMMISSIONER WAS GENERALLY AP-
POINTED TO DISTRIBUTE WATERS. It is a matter of common
knowledge throughout the state that practically every stream
of water of any consequence in the state has been the subject
of litigation in whole or in part, and that the water rights per-
taining thereto have been adjudicated and determined, and
that in nearly every one of these cases, especially where many
interests are involved, it has been the practice of the court to
provide in its decree for a commissioner or other functionary
subject to the orders of the court charged with the duty of
distributing the water as provided in the decree.

3. WATERS AND WATER COURSES—STATE ENGINEER HELD TO HAVE
JURISDICTION TO DISTRIBUTE ALL WATERS, PUBLIC AS WELL AS
THOSE LITIGATED. Under Laws 1919, c. 67, §§ 32, 62, 64, relat-
ing to distribution of waters, a state engineer has jurisdiction
to distribute water formerly decreed and distributed by a func-
tionary appointed by a court under a decree, as well as other
public waters of the state which have not been litigated, and is
bound to distribute it as to quantity and class in accordance
with the decree as long as it remains in force.

4. WATERS AND WATER COURSES—APPOINTMENT OF WATER COMMIS-
SIONER BY STATE ENGINEER SUPERSEDES APPOINTMENT MADE BY
DISTRICT COURT UNDER DECREE. The appointment by a state
engineer under Laws 1919, c. 67, § 62, of a water commissioner
to distribute waters formerly decreed and distributed by a

court, under a decree, supersedes the appointment made by the court.

5. CONSTITUTIONAL LAW—WATERS AND WATER COURSES—STATUTE AUTHORIZING STATE ENGINEER TO APPOINT WATER COMMISSIONER NOT INVALID AS IMPAIRING CONTRACTS OR VESTED RIGHTS UNDER DECREES. Laws 1919, c. 67, § 62, authorizing the state engineer to appoint a water commissioner to distribute waters formerly decreed, is not unconstitutional as impairing the obligation of a contract or other vested right on the ground that it deprives the water users under a former decree of the right under such decree to be heard upon the matter of the commissioner's compensation, for, under section 62, which is mandatory, the appointment of a water commissioner by the state engineer can only be made after consultation with the water users.

6. PROHIBITION—WATERS AND WATER COURSES—STATE ENGINEER IN APPOINTING WATER COMMISSIONER MUST COMPLY WITH STATUTE; AFFIDAVIT NOT SHOWING WATER USERS CONSULTED BEFORE APPOINTMENT OF COMMISSIONER FATALLY DEFECTIVE. While Laws 1919, c. 67, confers upon the state engineer jurisdiction to appoint water commissioners in cases where the rights to water had been adjudicated and determined, as well as in other cases, the engineer, in making the appointment, must comply with the statute, and hence an affidavit filed in support of a writ of prohibition to restrain a water commissioner appointed by the district court from interfering with the jurisdiction of the water commissioner appointed by the state engineer is fatally defective when it fails to show that the water users were consulted as required in section 62, before the appointment.

7. WATERS AND WATER COURSES—PHRASE "AFTER CONSULTATION WITH WATER USERS," IN STATUTE RELATING TO APPOINTMENT OF WATER COMMISSIONER, MEANS OPPORTUNITY TO BE HEARD AFTER NOTICE OF HEARING. The phrase, "after consultation with the water users," in Laws 1919, c. 67, § 62, conferring authority on the state engineer to appoint the water commissioner after consultation with water users, means an opportunity to be heard, at which time the question is open for any suggestion water users have to make, whether relating to the fitness of the proposed appointee, his salary and expenses, or other matters in which the water users feel they are vitally interested; and, though the statute does not indicate the procedure in bringing the state engineer and water users together for consultation, some form of reasonable notice should be given by the state engineer.

8. APPEAL AND ERROR—OBJECTIONS NOT GOING TO MERITS OF CASE

NOT CONSIDERED ON APPEAL. Where objections do not go to the merits of a case, they will not be considered by the appellate court.

Original application by R. E. Caldwell, State Engineer, for writ of prohibition to restrain Joseph H. Erickson, District Judge of the Sixth Judicial District, and another, from exercising jurisdiction in respect to distribution of certain waters.

WRIT DENIED.

*H. H. Cluff*, Atty. Gen., for plaintiff.

*Lewis Larson*, of Manti, and *D. N. Straup*, of Salt Lake City, for defendants.

THURMAN, J.

This is an application by the state engineer of the state of Utah for a writ of prohibition to restrain the defendants from exercising jurisdiction in respect to the distribution of the waters of Sevier river in Sevier county, Utah. Defendants demurred to the affidavit filed in support of the application. A brief statement of the material facts in narrative form will fairly present the questions to be determined. The defendant Hon. Joseph H. Erickson is judge of the district court of Sevier county, and the other defendant, Lewis W. Jones, is a water commissioner appointed in pursuance of a decree of said court. The decree was entered May 16, 1906, and after adjudicating and defining the rights of the parties litigant in and to the waters of the river the decree contains the following provision:

"For the purpose of carrying this decree into effect, according to its true intent and meaning, a commissioner will be appointed by order of this court made from time to time, to superintend and direct the measurement and division of the waters of the Sevier river and the springs, streams, and tributaries within the drainage basin, according to the provisions of this decree, and to direct the construction and to supervise and inspect all means and appliances for

the measurement thereof, and the diversion, conveyance, and use of the same, and to report from time to time to the court relating to all matters regarding the use and distribution of said waters and any violation of the provisions of this decree. Said commissioner to receive such compensation to be apportioned among the parties as may be agreed upon, if practicable; if not, to be fixed from time to time as necessary by order of this court."

In pursuance of·said provision, on the ———— day of February, 1922, the defendant, as judge of said court, made and entered an order appointing defendant Jones as commissioner, and thereafter in the month of April next following made and entered a further order approving a contract entered into between the water users under said decree and the commissioner providing for his compensation. On April 1, 1922, plaintiff, as state engineer, claiming authority under the provisions of chapter 67, § 62, Sess. Laws of 1919, hereinafter quoted, appointed one Brice McBride water commissioner to distribute the waters covered by said decree. Ever since the appointment of said McBride as commissioner, there has been a heated controversy between him and Jones as to which was entitled to administer the office. Each claims exclusive jurisdiction—Jones by virtue of his appointment by the court, and McBride under his appointment by the plaintiff as state engineer. The inevitable consequence has been an intolerable condition of affairs rendering it imperatively necessary that the rights of the contending parties should be adjudicated and determined by a competent tribunal. A detailed statement as to what actually occurred leading up to the commencement of this action is not essential to a determination of the questions involved.

Does the statute, chapter 67, supra, confer jurisdiction on the state engineer to distribute water under decrees rendered prior to the passage of the statute in cases where the decree provides for a court commissioner to distribute the water? That is the principal question. If the statute does confer such jurisdiction, then the further question arises: Does the statute impair the obligation of a contract or other vested right? If it be determined that the statute does confer jurisdiction in such cases, and that such statute is constitu-

tional, then the only question remaining is: Did the plaintiff as state engineer, comply with the material provisions of the statute in making the appointment?

The demurrer of defendants is both general and special, and fairly presents the foregoing questions for determination.

Chapter 67 creates the office of state engineer and defines his duties in respect to the management, control, and distribution of water for beneficial purposes. It also establishes the mode of procedure to be followed in making an appropriation of water and acquiring title thereto. Comparatively few of its provisions need be specially considered for the purpose of determining the questions involved in the instant case. The Attorney General, appearing for the plaintiff, relies mainly on the following sections, which we quote at length:

"Sec. 7. There shall be a state engineer, who shall be appointed by the Governor by and with the advice and consent of the Senate. He shall hold his office for the term of six years and until his successor shall have been appointed and qualified. He shall have general administrative supervision of the waters of the state and of their measurement, appropriation, apportionment and distribution. He shall have power to make and publish such rules and regulations as may be necessary from time to time fully to carry out the duties of his office and particularly to secure the equitable and fair apportionment and distribution of the water according to the respective rights of appropriators. The state engineer may establish water districts and define the boundaries thereof, said districts to be so constituted as to secure the best protection to the claimants of water, and the most economical supervision on the part of the state. No person shall be appointed to the office of state engineer who has not such theoretical knowledge and practical experience and skill as shall fit him for the position."

"Sec. 32. After full consideration of the statement of claims, the surveys, records and files and after a personal examination of the river system or water source involved, if such examination is deemed necessary, the state engineer shall formulate a proposed determination of all rights to the use of the water of such river system or water source, and a copy of such proposed determination shall be mailed by regular mail to each claimant, with notice that any claimant dissatisfied with such determination may within ninety days from such date of mailing file with the clerk of the district court a written objection thereto duly verified on oath. The state

engineer shall distribute the waters in accordance with said proposed determination ,until a final decree is rendered by the court, or until the court shall instruct him· otherwise. Provided, that the right to the use of said waters has not been theretofore decreed or adjudicated, but if formerly decreed and adjudicated, said waters shall be distributed in accordance with such decree until the same be reversed, modified, vacated, or otherwise legally set aside."

"Sec. 62. Wherever in the judgment of the state engineer, or the district court, it is necessary to appoint a water commissioner, or deputy commissioner for the distribution of water from any river system or water source, such commissioner or deputy commissioner shall be appointed by the state engineer, after consultation with the water users and the salary and expenses of such commissioner or deputy commissioner or commissioners shall be borne pro rata by the users of water from such river system or water source, upon a schedule to be fixed by the state engineer, and such pro rata share shall be paid by each water user to the state engineer in advance on or before the 1st day of April each year, and upon failure so to do, the state engineer may forbid the use of water by any such delinquent while such default continues, or may bring an action in the court for such unpaid expense and salary, and such court may issue an order to show cause upon any delinquent user or users why a judgment for said sum should not be entered. Any such commissioner or deputy commissioner may be removed by the state engineer for cause. The users of water from any river system or water source may petition the district court for the removal of any such commissioner or deputy commissioner, and after notice and hearing the court may order the removal of such commissioner or deputy commissioner, and direct the state engineer to appoint his successor."

"Sec. 64. The state engineer and his duly authorized assistants shall carry into effect the judgments of the courts in relation to the division, distribution or use of water under the provisions of this act. The state engineer shall divide, or cause to be divided, the water within any district, created under the provisions of this act, among the several appropriators entitled thereto in accordance with the right of each respectively, and shall regulate and control, or cause to be regulated and controlled, the use of such water by such closing or partial closing of the headgates as will prevent the waste of water or its use in excess of the volume to which the appropriator is lawfully entitled, and shall regulate, or cause to be regulated, the controlling works of reservoirs in accordance with the provisions of this act. .Whenever, in the pursuance of his duties, the state engineer regulates or causes to be regulated any headgate or the controlling works of any reservoir, he may attach to such headgate or controlling works a ˙written notice properly dated and

signed, setting forth that such headgate or controlling works has been properly regulated, and is wholly under his control, and such notice shall be a legal notce as to the facts therein contained to all parties interested in the division and distribution of water of such ditch or reservoir. Upon the request of the state engineer or any of his duly authorized assistants, it shall be the duty of the Attorney General, county or district attorney to appear and defend the state engineer or such assistant who shall be made defendant in any case which may arise in the pursuance of the duties of such officers within the district of said attorney."

Section 7 creates the office of state engineer, fixes the term, and defines his duties in general terms. There is nothing in the section that expressly, or by necessary implication, limits the jurisdiction of the state engineer to unappropriated waters or waters belonging to the state. Counsel for the defendants insist that the language in section 7, "He shall have general administrative supervision of the waters of the state," is significant, in that the word "of" is used instead of "in," thus limiting his supervision to public waters or waters belonging to the state. The court is of the opinion that this is a strained construction and not warranted by the general scope and purpose of the act when read and considered as a whole. Besides this, it is quite manifest that the words "waters of the state" and "waters in the state," when the entire statute is considered, are interchangeable terms meaning one and the same thing.

Section 32 comes closer to the point in question and requires interpretation. It provides that the state engineer, after obtaining certain data specified in previous sections, shall formulate a "proposed determination" of the water rights under his immediate investigation and shall mail a copy thereof to each water claimant with notice that such claimant, if dissatisfied, may file objection to such proposed determination. The section then provides that the state engineer shall distribute the water in accordance with said proposed determination until a decree is rendered by the court. This provision, however, is limited by a proviso that if the right to the use of the water has theretofore been adjudicated or decreed, "said waters shall be distributed in

accordance with such decree until the same is reversed, modified, vacated, or otherwise legally set aside.''

At this point the question arises: Must the waters, the right to which has been formerly decreed, be distributed, not only as to the quantity and class decreed, but also by the functionary who may have been appointed by the court under the terms of the decree?

We have no difficulty in arriving at the conclusion that the water must be distributed as to quantity and class as the decree provides until the decree is reversed, vacated, or modified by a competent tribunal, but the question as to whether the state engineer or his assistants shall distribute the water, or whether it should be done by the court commissioner, is not so easily solved. Were it not for one or more important considerations, which should not be overlooked in trying to ascertain the intention of the Legislature, the writer would incline to the view that the water should be distributed not only as to the quantity and class decreed but also by the person designated in the decree.

It is matter of common knowledge throughout the state that practically every stream of water of any consequence in the state has been the subject of litigation in whole or in part, and that the water rights pertaining thereto have been adjudicated and determined. It is also a matter of common knowledge that in nearly every one of these cases, especially where many interests are involved, it has been the practice of the court to provide in its decree for a commissioner or other functionary, subject to the orders of the court, charged with the duty of distributing the water as provided in the decree. These matters of common knowledge must have been taken cognizance of by the Legislature in the enactment of the statute under review. Furthermore, it must also have been known to the Legislature that the streams which had theretofore been the subject of litigation, in most instances, if not in all at some seasons of the year also carry surplus and unappropriated water of which the state, without question, has the exclusive right of disposition and control. In view of these condi-

tions, which in my opinion are undeniable, is it believable that the Legislature contemplated a joint control by the state engineer and some court commissioner in cases where the stream or canal carries public waters as well as waters formerly decreed? It must also be borne in mind that the statute authorizes, under certain conditions, the owner of a water right to convey his water through the ditch or canal of another. This would permit a subsequent appropriator, under the laws of the state, to convey his water through the ditch or canal of one whose rights had been decreed by a former adjudication. It seems inconceivable to me that the Legislature contemplated a case in which a court commissioner might control and distribute the decreed waters of a canal while waters of the same canal subsequently appropriated should be controlled by the state engineer.

For these reasons, more than any other which occur to my mind, I am of opinion that section 32 was intended to confer jurisdiction upon the state engineer to distribute water formerly decreed, as well as water which had not been the subject of litigation. As a matter of course, as to quantity and class of water, he is bound to distribute it in accordance with the decree as long as the decree remains in force.

But section 62 is the section upon which plaintiff mainly relies. It confers upon the district court or the state engineer the power to determine the necessity of a commissioner to distribute the waters of any particular river system or water source and for the appointment of such commissioner by the state engineer after consultation with the water users. The section also provides that the salary and expenses of such commissioner shall be borne pro rata by the water users from such river system or water source upon a schedule to be fixed by the state engineer, and it also provides that payment of such salary and expenses shall be made in advance on or before the 1st day of April of each year. Upon failure to make such payment, the state engineer may forbid the use of the water by such delinquent. The

remaining provisions of the section have little or no bearing upon the questions presented here.

The first sentence of section 64 appears to be material and may well be considered in this connection. It expressly provides that the state engineer and his duly authorized assistants shall carry into effect the judgments of the courts in relation to the division and distribution or use of the water, under the provisions of the act.

The provisions of sections 62 and 64, when considered in connection with the reasons hereinbefore urged in favor of a construction giving the state engineer jurisdiction over waters formerly decreed as well as of the public       4
waters of the state, irresistibly lead to the conclusion that the Legislature must have deliberately intended that the state engineer should be given such control, and that the appointment of a commissioner by him, when lawfully made, should supersede any appointment made by the court, under a former decree.

The next question to be considered is: Does this interpretation of the statute render it obnoxious to the constitutional provision against impairing the obligation of contracts or other vested rights?

Counsel for defendants earnestly insist that if the statute is held to confer jurisdiction on the state engineer in the case at bar, then the statute must be held to be unconstitutional in that it impairs the vested rights of defendants. Counsel argue the case from the standpoint of reason alone and cite no authority in point. The Attorney General, on the other hand, contends that the statute is not unconstitutional; that the right in question pertains merely to administration and regulation, without in any manner disturbing or interfering with defendants' vested rights. The point is made that no power is given the state engineer, or his subordinates, to deprive any person of the water to which he is entitled, but that the statute merely provides for control and distribution by another functionary than the one named in the decree, and that this is a rightful subject of legislation. There is much force in this contention, but in the

opinion of the writer the question cuts close to the border line. It should not be dismissed by a stroke of the pen or a wave of the hand. The decree under which the court commissioner was appointed, as appears from the excerpt quoted, gives the water users the right to be heard upon the matter of the commissioner's compensation, and while it did not give them the absolute right to determine what the compensation should be, it at least gave them an opportunity to be heard and present their reasons for or against any proposition relating to compensation. We are not prepared to say that this is not a substantial right or one of which the water users could be entirely deprived under the guise of regulation or administrative control. Whatever the financial burden may be, the water users are required to foot the bill. The provision in the decree giving them a right to be heard upon the question of compensation was but the recognition of a fundamental American doctrine. Taxation without some form of representation has ever been repugnant to the sensibilities of the American people. If the statute in question entirely deprived the water users of any and every right to be heard respecting the appointment of a water commissioner, I would hesitate long before conceding the constitutionality of the statute, as applied to the instant case. But as I interpret the statute, section 62, supra, the appointment of a commissioner by the state engineer can only be made "after consultation with the water users" which, in my opinion, clearly means that the water users have just as much right to be heard in the matter of selecting a commissioner as the state engineer has to make the appointment after the water users have been consulted. While I regard the provisions of the statute conferring jurisdiction upon the state engineer to appoint the commissioner as mandatory, I also regard as mandatory the provision that the appointment cannot be made until the water users have had an opportunity to be heard.

This brings us to the third and last question to be determined: Did the plaintiff, as state engineer, comply with

the essential provisions of the statute in making the appointment of Brice McBride as commissioner? If he did, it is not made to appear in his affidavit filed in the instant case. While we are of opinion that the statute, chapter 67, confers upon the state engineer jurisdiction to appoint commissioners in cases where the rights to water have been adjudicated and determined, as well as in other cases, we are likewise of opinion that in making the appointment the essential provisions of the statute should be complied with. We cannot avoid the conclusion that the affidavit filed in support of the application for the writ is fatally defective in failing to show that the water users were consulted before the appointment was made by the state engineer. Just what is comprehended in the term "consultation with the water users" is more or less vague and uncertain, but in any event it undoubtedly means an opportunity to be heard, at which time the question is open for any suggestion the water users have to make, whether relating to the fitness of the proposed appointee, his salary and expenses, or other matters in which the water users feel they are vitally interested. The statute does not indicate the procedure for bringing the state engineer and water users together for consultation. **6, 7** Some form of notice reasonably calculated to inform such water users of the time, place and purpose of the meeting should be given by the state engineer. Section 60 of the act provides that all proceedings and hearings requiring the attendance of water users shall be within the county where the land is situated.

With the foregoing interpretation of the statute, as far as we are able to determine, every substantial right of the water users under the decree may be preserved.

In arriving at this conclusion we have not deemed it necessary to determine other questions raised by the demurrer. Many technical objections are urged against the form of action adopted by plaintiff in this proceeding. These objections do not go to the merits of the case, and therefore are not necessary to be determined in the case before the court. In view of the state-wide importance of the principal

question involved, we have concluded to dispose of the case on its merits.

For the reasons stated, the writ prayed for in the application is denied.

WEBER,, C. J., and GIDEON and FRICK, JJ., concur.

For the reason that the term of office of Hon. E. E. CORF-MAN, who was Chief Justice, expired after the presentation and submission of the foregoing case at the October, 1922, term, and that the opinion was filed after his retirement, his name is omitted from the opinion.