**TIMPANOGOS PLANNING AND WATER MANAGEMENT AGENCY, a Utah Interlocal Co-operation Act entity, et al., Plaintiffs and Appellants,**

v.

**CENTRAL UTAH WATER CONSERVANCY DISTRICT, a Utah water district, et al., Defendants and Respondents.**

**No. 19482.**

Supreme Court of Utah.

Oct. 10, 1984.

---

2. See *State v. Elton*, Utah, 657 P.2d 1261 (1982).

James S. Jardine, Kent H. Murdock, John A. Adams, Salt Lake City, for plaintiffs and appellants.

Edward W. Clyde, Salt Lake City, for defendants and respondents.

Merlin K. Jensen, Douglas A. Taggart, Ogden, for Weber Basin.

Hugh W. Colton, Vernal, for Uintah.

Therold N. Jensen, Price, for Carbon.

HOWE, Justice:

Plaintiff Timpanogos Planning and Water Management Agency and others brought this suit to have U.C.A., 1953, § 73–9–9, as constituted prior to its amendment in 1983, declared unconstitutional on the ground that it violated the separation of powers mandated by Utah Constitution article V, section 1. The statute provided for the appointment of boards of directors of water conservancy districts to be made by the district court. By its 1983 amendment, L. 1983, ch. 350, § 1, the legislature provided for the appointment to be made by the board of county commissioners of a single county district and by the Governor with the advice and consent of the Senate in multi-county districts.

 Inasmuch as six of the court-appointed directors of defendant Central Utah Water Conservancy District (CUWCD) are presently serving, and their terms do not expire until 1985, there is a justiciable controversy, and the constitutionality of section 73–9–9, prior to its amendment, must be decided. In addressing this issue, our role as interpreters of the law dictates that we afford the statute every presumption of validity, so long as there is a reasonable basis upon which both provisions of the statute and the mandate of the constitution may be reconciled. *Murray City v. Hall*, Utah, 663 P.2d 1314 (1983); *Matheson v. Ferry*, Utah, 641 P.2d 674 (1982); *Zamora v. Draper*, Utah, 635 P.2d 78 (1981).

In their first claim, plaintiffs sought to permanently enjoin the board from functioning so long as it is constituted in whole or in part of court-appointed members. In their second claim, plaintiffs invoked Utah Rules of Civil Procedure 65B(d) seeking similar relief. CUWCD challenges plaintiffs' standing to bring action under that rule, but inasmuch as no attack is made on plaintiffs' standing as to their first claim, U.C.A., 1953, § 78–33–2, we need not entertain the challenge to standing as to the second claim. The district court granted summary judgment to CUWCD, holding the statute prior to its amendment constitutional and not in violation of Utah Constitution article V, section 1. That section provides:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

## DOCTRINE OF SEPARATION OF POWERS

Our reluctance to encroach upon the legislature's powers to make laws may be traced to the same wellsprings of our tripartite system of government invoked by plaintiffs on the issue before us. Montesquieu's writings warn us that there can be no liberty if the powers of the three branches of government do not remain separate. Madison recognized the principle as more sacred than any other in a free constitution, and that no one branch should possess, directly or indirectly, an overruling influence over the others in the administration of its powers. Justice Marshall adhered to the principle in *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60.[1] The dissenting voice of Justice Brandeis in *Myers*

---

**1.** See generally *Matheson v. Ferry*, Utah, 641 P.2d 674 (1982); Howe, J., concurring, and Stewart, J., concurring and dissenting.

*v. U.S.*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), in rejecting the majority's holding that the removal of inferior officers by the President without the consent of the Senate was permitted by the constitution, cautioned that the doctrine of the separation of powers was not fashioned to promote efficiency but to preclude the exercise of arbitrary power. The fundament of the doctrine remained unassailable when the United States Supreme Court through Justice Frankfurter reminded the President that his action of seizing the nation's steel mills to prevent a national catastrophe threatened to be an "accretion of dangerous power" which comes from the "unchecked disregard" of the checks and balances that doctrine was created to provide. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 594, 72 S.Ct. 863, 889, 96 L.Ed. 1153 (1952). Whether implied, as in our federal constitution and in those of fourteen states,[2] or whether expressly stated, as in our own state's constitution, the doctrine of separation of powers is the control gate harnessing the reservoir of powers of a government which functions at the will of the people.

Twice recently we have had occasion to redefine the boundaries beyond which one branch may not be permitted to exercise power in the domain of another. In *Rampton v. Barlow*, 23 Utah 2d 383, 464 P.2d 378 (1970), we held that the statutory authorization for the President of the State Senate and the Speaker of the House to each appoint three members to the State Board of Higher Education was an impermissible intrusion of the legislature into the power of appointment inherent in the executive and contrary to the provisions of Utah Constitution article V, section 1. In *Matheson v. Ferry*, Utah, 641 P.2d 674 (1982), a statute providing for the legislature to participate in the nomination of candidates for judge and requiring Senate approval of the Governor's appointment of the candidate he selected, was found to

amount to effective control by the legislature over the executive branch and thus offensive to Utah Constitution article V, section 1.

In the case under review, we are asked to find that section 73–9–9, prior to its amendment, constituted an impermissible intrusion by the judiciary into legislative and/or executive powers, violating Utah Constitution article V, section 1, and threatening the impartiality of judges.

Utah's Water Conservancy Act was initially adopted in 1941, patterned after acts then in force in Colorado and Ohio. At one time or another in the early stages of their existence, most of these acts and other similar ones were attacked for their constitutionality. Few were tested again, and fewer yet were ever held unconstitutional. CUWCD has marshalled an arsenal of case law stretching over a period of more than half a century to buttress its argument that the vesting of appointment powers in district judges incidental to the exercise of judicial power does not violate the doctrine of separation of powers. In the following we specifically address those cases.

Colorado: *People ex rel. Rogers v. Letford*, 102 Colo. 284, 79 P.2d 274 (1938), and *People ex rel. Keyes v. Lee*, 72 Colo. 598, 213 P. 583 (1923), held the judges' power to appoint directors to the board of a water conservancy district incidental to the exercise of judicial functions. Those cases have been criticized by the Oklahoma court, as pointed out below. However, since the Letford decision, substantial changes have been made in the Colorado law which may moot that criticism. Colo.Rev.Stat. § 37–45–112(7) (1973) vests Colorado's water conservancy districts with all the powers of municipal corporations. The Colorado constitution expressly empowers its general assembly to provide for the appointment of municipal officers as "public convenience

---

**2.** Alaska, Delaware, Georgia, Hawaii, Kansas, Maryland, New York, North Carolina, North Dakota, Ohio, Pennsylvania, South Carolina, Washington and Wisconsin do not expressly provide in their constitutions for a division of powers among the three branches of government.

may require."[3] In addition to the constitutional ground, section 37–45–114(2) of the Colorado Water Conservancy Article provides for a further check and balance on the judges' power of appointment. It allows the electorate to initiate the elective process if it is dissatisfied with the judges' appointment of directors. *Matthews v. Tri-County Water Conservancy*, 200 Colo. 202, 613 P.2d 889 (1980); William R. Kelly, Water Conservancy District, 22 Rocky Mtn. L.R. 432 (1949–50). No such provision is contained in Utah's act.

New Mexico: In re *Proposed Middle Rio Grande Conservancy District*, 31 N.M. 188, 242 P. 683 (1925), followed the holding of People ex rel. *Keyes v. Lee*, supra, and other cases upholding district courts' appointment powers. Court-appointed boards of directors have been abolished in New Mexico and the directors must now submit to election. N.M.Stat.Ann. §§ 73–14–18 through 73–14–32, and 73–14–54 through 73–14–69 (1978).

Indiana: *Martin v. Ben Davis Conservancy District*, 238 Ind. 502, 153 N.E.2d 125 (1958), held appointment power by judiciary under the 1957 Indiana act constitutional. In 1967 the Indiana legislature changed that law to provide for direct election of the directors by freeholders. *Holland v. Ballard*, 270 Ind. 173, 383 N.E.2d 1032 (1978); Ind.Code Ann. § 13–3–3–34 (Burns 1981, 1984 Supp.).

Minnesota: *State ex rel. Skordahl v. Flaherty*, 140 Minn. 19, 167 N.W. 122 (1918) upheld the constitutionality of a court-appointed board of directors. Under Minn.Stat. § 111.07 (1982) of the Minnesota Drainage and Conservancy Act, the court names and appoints the first board of directors; the court fills vacancies and each director holds office until he is *elected* and qualifies. Minn.Stat. § 111.10. Moreover, the board of directors appoints three disinterested citizens to act as viewers. Minn. Stat. § 111.11.

Ohio: *Miami County v. City of Dayton*, 92 Ohio St. 215, 110 N.E. 726 (1915), the earliest of the cases, may well have set the tone in finding court-appointed directors constitutional and in considering the powers conferred quasi-legislative, quasi-administrative and quasi-judicial. In addition, Ohio even provides its judges with extra compensation for this duty. In canvassing the case law relied upon by CUWCD, we find Ohio is one of only three states that grants its judges unfettered discretion in the appointment of directors of water conservancy districts.[4] The Ohio constitution contains no separation of powers clause which may account for the blurred distinction drawn among the "quasi" powers mentioned in Miami County, supra.

Oklahoma: *Bridal v. Cottonwood Creek Conservancy District No. 11*, Okla., 405 P.2d 17 (1965), though upholding the power of the court to appoint the board of directors, points to the checks and balances allowed under its Water Conservancy Act which renders it inviolate from "decisive objections made to the Colorado ... legislation." Id. at 33. Okla.Stat.Ann. tit. 82, § 541(d) (West 1970) now provides for the district court to appoint the board of directors of a master conservancy district, with the governing body selecting or causing to be elected all subsequent directors subject to the approval of the district judge who approves their selection based upon qualifications under law. Also, a temporary board of directors of each individual water conservancy is elected, and thereafter a permanent board, under the supervision of the district court. Okla.Stat.Ann. tit. 82, § 561 (West 1970).

Two other cases cited by CUWCD for the proposition that the functions of one de-

---

**3.** Colo. Const. art. XIV, § 12 reads: "Other officers. The general assembly shall provide for the election or appointment of such other county officers and such municipal officers of statutory cities and towns as public convenience may require; and their term of office shall be prescribed by statute."

**4.** The other two are Montana and Nevada. Mont.Code Ann. § 85–9–401 (1983); Nev.Rev. Stat. § 541.100 (1979).

partment may be exercised in another without violating the doctrine of separation of powers are *Ex parte Siebold,* 10 Otto 371, 100 U.S. 371, 25 L.Ed. 717 (1879) and *Hobson v. Hansen,* 265 F.Supp. 902 (D.C.1967). The statute attacked in Siebold provided for the appointment of election supervisors by judges. Though held constitutional, J. Wright in his dissent in Hobson pointed out that that statute was subsequently repealed. *Hobson,* supra at 921 n. 6, (Wright, J., dissenting). *Hobson v. Hansen,* supra, questioned for the first time the constitutionality of a statute under which District of Columbia district judges had for 61 years appointed members of the Board of Education. Again, the statute was held constitutional, but the House of Representatives that same year, by a vote of 324 to 3, removed the appointment duties of the court and provided for the election of school board officials by District of Columbia voters. 113 Cong.Rec. H12, 376–80 (daily ed. Sept. 25, 1967), as cited in note, 81 Harv.L.Rev. 702, n. 1 (1967–68).

The doctrine of separation of powers in evolving from its early stages has undergone several changes in interpretation. It was Justice Story's view, widely followed in his time "that the whole *power* of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments." Story on the Constitution, 5th ed. § 525, cited in *Bailey v. State Board of Public Affairs,* 194 Okl. 495, 153 P.2d 235, 239 (1945); C. Sands, Sutherland Statutory Construction, § 3.03. The classical concept of the doctrine, in its ascent during the second half of the nineteenth century, considered the *functions* appropriate to each of the three branches of government vested in a separate body of public servants. Perfection of the system under that view required the dividing lines to be broadly and clearly defined. Sutherland Statutory Construction, supra, § 3.04, citing *Kilbourn v. Thompson,* 13 Otto 168, 103 U.S. 168, 26 L.Ed. 377 (1880). Under the modern interpretation of the doctrine, one branch of government may exercise some

of the powers of the other departments "when it is essential to the discharge of a *primary function,* when it is not an assumption of the whole power of another department, and when the exercise of the other power does not jeopardize individual liberty." Sutherland Statutory Construction, supra, § 3.06 (emphasis added).

■■■ The language of Utah Constitution article V, section 1[5] reflects the classical view of its time: one governmental branch is precluded from exercising *functions* properly belonging to another. Nonetheless, as our state government has evolved, so has the concept of how broadly the lines of separation remain defined. We believe the policy sound that focuses on separate *primary functions.* With that view in mind we now determine whether the district court's appointment of directors to the water conservancy district was in discharge of the court's primary function.

## CONSTITUTIONAL CHECKS AND BALANCES

### 1. Executive Power

Utah Constitution article VII, section 5 vests the executive power of the State in the Governor who shall see that the laws are faithfully executed. Section 10 provides that: "[t]he governor shall nominate, and by and with consent of the Senate, appoint all State and district officers whose offices are established by this Constitution, or which may be created by law, and whose appointment or election is *not otherwise provided for.*" (Emphasis added.) In *Rampton v. Barlow,* supra, we noted that the underscored language might arguably give the legislature the right to appoint when so provided by statute, but that power was restricted in view of the separation of powers clause. Citing to *In re Opinion of the Justices,* 302 Mass. 605, 19 N.E.2d 807 (1939), we stated that the power to appoint and the power to remove officers are in their nature executive powers and held that legislative appointment to offices in the executive department was unconsti-

**5.** Utah Constitution, effective January 4, 1896.

tutional. In *Matheson v. Ferry*, supra, we found the legislative encroachment upon the executive department tantamount to effective control over that department and therefore unconstitutional.

Judicial appointments of nonjudicial officers have been questioned in other forums. In *In re Opinion of the Justices*, 300 Mass. 596, 14 N.E.2d 465 (1938), 118 A.L.R. 166, the Supreme Judicial Court of Massachusetts found proposed legislation providing for the removal of a mayor of a city by a majority of the justices of the supreme judicial court in violation of the constitutional prohibition against the exercise of executive powers by the judicial department.

In *State ex rel. Young v. Brill*, 100 Minn. 499, 111 N.W. 639 (1907), a statute was amended to allow the judges of the district court continual powers to appoint three directors of a Board of Control to oversee almshouses and hospitals and to administer the needs of the poor. A writ of mandamus was filed against the judges who had refused to fill the vacancies created as required by statute. The court held the statute unconstitutional, reasoning that the Board of Control was not judicial in nature, and allowing the legislature to require courts to make appointments would next lead to supervision, removal, investigation, reporting on administration, and finally administration itself, by the court. Ultimately, it would render nugatory the constitutional prohibition.

In *Application of O'Sullivan*, 117 Mont. 295, 158 P.2d 306, 161 A.L.R. 487 (1945), the petitioner sought preference for appointment as city attorney under a recently amended veteran's public employment act. The amendment dispensed with notice and hearing to the appointing authority, which had formerly been required. No longer was the appointing authority ordered to show cause why the veteran should not be employed. Instead of providing for an adversary proceeding, the amendment gave the court original jurisdiction to determine whether the applicant was entitled to preference and to issue an order directing the appointing authority to appoint the veteran. That order, said the court, was equivalent to appointment, and the question was posed whether the legislature could place the power of appointment in the judiciary:

> The answer must be in the negative where, as here, the appointment is in no manner connected with the operations of the judiciary. Generally speaking, the power of appointment is an executive function [citation omitted], which cannot be delegated to the judiciary . . . .
>
> . . . Judges of courts created by the constitution should not be burdened with executive or administrative duties. They should, as nearly as possible, be free from everything not judicial in character. Respect for the position has materially lessened whenever judges have attempted to discharge duties of an executive character. The judge should have no favors to grant, no patronage to dispose of, and no friends to reward.

In *Galloway v. Truesdell*, 83 Nev. 13, 422 P.2d 237 (1967), the district court's statutory power to grant or deny certificates of permission to ministers to perform marriages was held to be an unconstitutional delegation of non-judicial powers to the judiciary.

### 2. Judicial Power

Utah Constitution article VIII, section 1 vests the judicial power "in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law." The judicial power of the district courts is set out in Utah Constitution article VIII, section 7:

> The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same. The District Courts or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and other writs necessary to carry into effect

their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions.

■ "The term 'judicial power of courts' is generally understood to be the power to hear and determine controversies between adverse parties and questions in litigation." *Citizens Club v. Welling*, 83 Utah 81, 90, 27 P.2d 23, 26 (1933). It is the power that is reflected in the orders, judgments and decrees enumerated in Utah Constitution article VIII, section 7. Judicial power "is the *authority* to hear and determine justiciable controversies.... [It] includes the authority to enforce any valid judgment, decree or order." *Galloway v. Truesdell*, supra, 422 P.2d at 242 (emphasis in original). "The courts can act only as controversies arise between litigants, and then only by determining the questions presented by the litigation." *Nebraska Mid-State Reclamation District v. Hall County*, 152 Neb. 410, 429, 41 N.W.2d 397, 409 (1950) (dictum in discussion of role of administrative bodies). Justice Holmes, in defining judicial inquiry in *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), stated that the question depended not so much on the character of the body but of the proceedings: "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." Judges are interpreters of law. *Rampton v. Barlow*, supra, 464 P.2d at 390. "They speak the 'rule or sentence.' " *In re Richardson*, 247 N.Y. 401, 411, 160 N.E. 655, 658 (1928).

■ CUWCD contends that the organization of conservancy districts and many of the ongoing duties of the court with respect to the districts are judicial or quasi-judicial in nature, fully justifying court appointment of directors. It goes without saying that the constitutionality of some or all of the judicial functions enumerated in other sections of the act may not be employed as a yardstick to measure the constitutionality of the section under attack. Its

soundness must instead be gauged by the character of the duty imposed, whether it is judicial in nature, or whether it is in the discharge of a primary function of the judiciary as hereafter discussed, or whether it is unrelated thereto. No one could seriously contend that any extrajudicial functions are imposed by any of the following sections: U.C.A., 1953, § 73–9–3 vests the district court with jurisdiction to establish water conservancy districts, provided certain conditions enumerated in section 73–9–4 are met. The court examines the petition for compliance with and sufficiency of preceptive terms, and where defective, permits it to be amended to conform to the requirements of the law. Section 73–9–5 gives the court discretion to approve the bond filed with a petition or to dismiss the petition if the bond is insufficient in amount. Section 73–9–6 requires the court to fix a place and time for a hearing on the petition to establish a district, with notice of hearing mailed and published. Section 73–9–7 spells out the procedures to be followed where objections to the establishment of a district by the affected citizenry are made. The court makes findings from the evidence and either dismisses or approves the petition. Its order is final and conclusive on all parties and may be appealed. Where no objections stand in the way to creation of the district, the court adjudicates all questions of jurisdiction, declares the district organized, gives it its corporate name and in the decree designates the principal place of business.

However, the court's functions do not end with the creation of the district. The court's duties with relation to the district continue. Section 73–9–9, prior to its amendment, provided for the court to appoint the members of the board of directors, fix the amount of their bond and receive their annual report. Section 73–9–10 provides for the court to fix the compensation of the members of the board which is not to exceed $1,000 per year. Section 73–9–14 provides for the creation of subdistricts by the court following a process similar to the creation of the original district.

In section 73-9-15, et seq., district boards are vested with the power and authority to levy and collect taxes and special assessments for maintaining and operating the district. The court is endowed with the power to hear appeals by any aggrieved property owner. Section 73-9-21. Changes in the boundary of the district whether by annexation of new lands, section 73-9-29, or the disconnection of lands from the district, section 73-9-30, are done by petition to the court. Finally, section 73-9-36 prescribes an uncommon procedure whereby the board may file a petition in the court for a judicial examination and determination of the legality of any "tax or assessment levied or of any act, proceeding or contract of the district, whether or not said contract shall have been executed ...." The court thereupon holds a hearing after giving public notice and a judgment is entered.

We agree with counsel for CUWCD that the cases on separation of powers do not enunciate bright lines whereby each of the three governmental powers may be quickly and clearly identified. See *Tite v. State Tax Commission*, 89 Utah 404, 57 P.2d 734 (1936) and *Citizen's Club v. Welling*, supra. However, in reviewing the powers of the district court with relation to water conservancy districts, the requirement that the court appoint the members of the boards of directors stands out as incongruous and totally unrelated to its primary function to organize the district in the first instance and then to continue to offer it guidance on legal questions which arise in the conduct of its operation. Counsel for CUWCD has not suggested, and we have been unable to find, any public purpose served, or even any convenience accorded by the court making the appointment, or any benefit derived that would be lost were the appointment in the hands of the executive. We therefore must conclude that the power of appointment is in no wise exercised in the discharge of the primary function of the judiciary. Indeed, a court can better discharge its duty to determine the validity of board actions if it is completely detached from the appointment of the members. Boards are vested by statute with broad powers. Among those powers are the power to appropriate water; exercise power of eminent domain; construct all types of aqueducts and all incidental structures necessary to their operation; contract with the U.S. government or other public or private entities for the construction and operation of waterworks and the sale and disposal of water; allot water, levy taxes and assessments and fix rates for services; and finally, invest monies, with all attendant powers. The court in reviewing the exercise of these powers by the board might well be placed in the position of impugning its own judgment in choosing the members. The court should be left free from all connection with the individual members so that it would not in any way feel constrained in passing upon board action.

### 3. Incidental Powers

CUWCD urges us to adopt the view held in several of the cases cited by it that the court's power to appoint the board of directors is merely incidental to its judicial function. We cannot subscribe to that characterization of this important duty of appointment. Boards are endowed with broad discretionary powers including the power of eminent domain, taxation and contract. In contrast, incidental powers are ministerial "housekeeping" chores. *In re Salaries for Probation Officers of Bergen County*, 58 N.J. 422, 278 A.2d 417 (1971). Nor is the appointment of the directors an inherent power to control personnel directly connected with the operation of the courts, *Broomfield v. Maricopa County*, 112 Ariz. 565, 544 P.2d 1080 (1975). It cannot be considered a limited ministerial function as in the appointment of receivers to collect assessments for payment to bondholders, *Fladung v. City of Boulder*, 165 Colo. 271, 438 P.2d 688 (1968). "Ministerial functions are methods of implementation to accomplish or put into effect the basic function of each Department." *Galloway*, supra, at 243. "From the beginnings of our history, the principle has been enforced

that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfilment of judicial duties." *In re Richardson*, supra, 160 N.E. at 657.

CUWCD cites *Hobson v. Hansen*, supra, for the proposition that the power of appointment is proper where ministerial in nature. Hobson relied, inter alia, upon United States Constitution article II, section 2, which provides that: "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." There is no analogous provision in Utah's constitution. However, CUWCD points out that the Court in *Hobson v. Hansen*, supra, rejected the contention that the appointive power of courts can include only officers related in some manner to the judicial function. It refers us specifically to state cases cited in footnote 7 of the opinion which dealt with the judicial power of appointment to agencies not created and monitored by the court. We decline to follow those cases because we believe that they do violence to the separation of powers in allowing courts to appoint nonjudicial officers. Wherever the boundaries may be drawn between the separate powers, and however blurred the lines may at times appear, the constitutional construction urged upon us by CUWCD is, in the words of Justice Wright, "instinctively hostile to American constitutional tradition." *Hobson*, supra, at 920.

CUWCD also likens the court's appointment of directors to the former long-standing practice in this state of district courts appointing water commissioners. In support it cites *Jensen v. Birch Creek Ranch Co.*, 76 Utah 356, 289 P. 1097 (1930); *Caldwell v. Erickson*, 61 Utah 265, 213 P. 182 (1923); *Montezuma Canal Co., v. Smithville Canal Co.*, 218 U.S. 371, 31 S.Ct. 67, 54 L.Ed. 1074 (1910). A major distinction is immediately evident. Water commissioners merely administer district court adjudications of water users' rights to a stream of water. In contrast, boards of directors of water conservancy districts in no wise administer decrees or serve or assist the court in any way in discharging its duties.

## JUDICIAL INTEGRITY

When a court is empowered to pick men and women for their professional qualifications or expertise in administering the operation of a water conservancy district, it acts beyond the scope of its primary function to interpret and adjudicate with dispassionate impartiality questions of law between adverse parties and instead may become embroiled in the political pull of powerful factions seeking to advance rival interests. "Centuries of constitutional law tradition warn us with echoing impressiveness that this is not a judge's work. We should be sorry to weaken that tradition by any judgment of this court." In re Richardson, supra. To paraphrase Justice Wright's concerns in *Hobson*, supra, counsel would be leery of antagonizing the court in any litigation involving the board of directors and hesitate to attack actions of the board where warranted. The board, subject to reappointment by the court, would avoid confrontations with the power that gave it power and could take that power away. "Decisions of the court upholding the board would, moreover, be susceptible to understandably cynical popular interpretations." Id. at 931.

Yet CUWCD would persuade us that as government becomes more complex, the functions of the three branches of government, of necessity, become more indistinct. Such a step in the direction of centralization and consolidation of power would seem to us tantamount to loss of democracy in the name of efficiency, an untenable proposition under our system of jurisprudence.

In response to the President's request that he undertake an investigating commission to report on the administration's handling of the nation's rubber supply, Justice Stone declined with words equally apposite here.

A judge ... cannot engage in political debate or make public defense of his

acts. When his action is judicial he may always rely upon the support of the defined record upon which his action is based .... But when he participates in the action of the executive or legislative departments of government he is without those supports. He exposes himself to attack and indeed invites it, which because of his peculiar situation inevitably impairs his value as a judge and the appropriate influence of his office.

Letter from Harlan Fiske Stone to Franklin D. Roosevelt, July 20, 1942, in Mason, Extra-Judicial Work for Judges: The Views of Chief Justice Stone, 67 Harv.L.Rev. 193, 203–204 (1953).

## PATTERICK DECISION

CUWCD asserts that this Court addressed the constitutionality of judicial appointments in *Patterick v. Carbon Water Conservancy District*, 106 Utah 55, 145 P.2d 503 (1944). It urges us, under principles of stare decisis, to find the issue decided and settled. *Patterick*, supra, tested the validity of many sections of the Water Conservancy Act which was enacted in 1941. The court found U.C.A., 1943, § 100–11–7, to the extent that it denied the right of appeal, unconstitutional, but upheld the remaining sections expressly addressed by it. The question of judicial appointment of the board of directors was not addressed in the opinion of this Court. In the preface, we stated:

> Plaintiff cites numerous grounds wherein he contends the Constitution has been violated. For the sake of brevity wherever possible we shall consolidate these grounds, and will set out in the opinion only so much of the act and the constitutional provisions as we deem necessary to a decision of the questions involved herein.

*Id.* 106 Utah at 60, 145 P.2d 503. The opinion concluded:

> Plaintiff argues numerous other grounds wherein he contends the Water Conservancy Act violates the Constitution. He cites no cases in support of his arguments, and it would unduly lengthen this opinion, which is perhaps already too prolix, to answer all of his contentions. Suffice it to say we have examined them and found them without merit.

*Id.* 106 Utah at 75, 145 P.2d 503.

It is difficult to deduce from this last paragraph whether this Court refused to address issues not authoritatively raised or whether it summarily ruled on the constitutionality of the issues not expressly framed by it. We have the original briefs filed in that case before us, and the constitutionality of judicial appointment was raised, though not briefed by the petitioner. To the extent that Patterick attempted to hold that the power of the court to appoint the board of directors of water conservancy districts was constitutionally sound, it is hereby expressly overruled.

## CONCLUSION

We conclude that U.C.A., 1953, § 73–9–9, prior to its amendment, was in violation of Utah Constitution article V, section 1. By corollary section 73–9–14, which vested the district courts with like power of appointment of boards of directors of subdistricts, was likewise violative. We believe the action by the legislature to provide for appointment from within the executive branch rests on solid principle. It frees the courts to pursue their primary function as judges. It leaves them untainted by the cabals of politics and neutral in the selection of those whose functions they are ordained to monitor.

■ Our decision that section 73–9–9 as constituted prior to its amendment was unconstitutional is to have prospective application only. CUWCD and perhaps other water districts have in good faith relied upon our decision in *Patterick v. Carbon Water Conservancy District*, supra, in conducting their business for several decades. We would work an injustice to cast a cloud upon the legality of their operations during those many years. In the exercise of our discretion, our ruling is made prospective, *Board of Education of Granite School District v. Salt Lake County*, Utah, 659 P.2d 1030, 1037 (1983); *Loyal Order of Moose, #259 v. County Board of*

*Equalization,* Utah, 657 P.2d 257 (1982). This will dictate that the offices held by six court-appointed directors are vacant and are now subject to being filled by gubernatorial appointment, with Senate confirmation. Section 73–9–9 (Supp.1983).

The summary judgment is reversed and the case is remanded to the district court to enter judgment in favor of the plaintiffs in accordance with this opinion. Costs are awarded to plaintiffs.

HALL, C.J., DURHAM, J., and J. DENNIS FREDERICK, District Judge, concur.

STEWART, J., does not participate herein.

FREDERICK, District Judge, sat.

ZIMMERMAN, J., does not participate herein.